594 A.2d 606

**In re GUARDIANSHIP NO. 89–CA–9865 in the CIRCUIT COURT FOR HOWARD COUNTY.**

**No. 1157, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

Aug. 29, 1991.

William H. Morstein, Ellicott City, for appellant Sally Clemons.

J. Joseph Curran, Jr., Atty. Gen. and Nancy B. Shuger, Asst. Atty. Gen., Baltimore, for amicus curiae, State of Md.

No brief or appearance by appellees' counsel.

Argued before BISHOP and FISCHER, JJ., and JAMES S. GETTY, Associate Judges of the Court of Special Appeals (Retired), Specially Assigned.

JAMES S. GETTY, Judge, Specially Assigned.

The appellant herein, Sally Clemons, appeals from an Order of the Circuit Court for Howard County directing that she is jointly and severally liable, together with a child placement agency known as Adoption Counseling Organization and Resource Network (ACORN), for costs and attorney fees arising from an adoption proceeding.

Appellant alleges that:

1. The Master in Chancery of the Circuit Court for Howard County did not have jurisdiction to hear the guardianship proceeding resulting in the assessment of costs and expenses against the appellant.

2. The court erred in not sustaining the exception to the Master's recommendation that an individual not a party to the proceedings (Clemons) be held responsible for fees and expenses.

### Background

Mr. and Mrs L sought to adopt a child born and residing in the Philippines. In April, 1988, they were contacted by appellant, who was the Executive Director of ACORN, concerning an available child. The adopting parents were asked to adopt a second child, Raymond, but they declined. Eventually they were told that a family had been found for Raymond, and they were asked by appellant to escort Raymond back to the United States along with their own child. According to the L's, ACORN would reduce its agency fee by $1,300.00 in exchange for their returning Raymond; they agreed.

One week before leaving for the Philippines, the L's were told they would be required to do a "proxy" adoption of Raymond in order to clear the way for his release into their custody. The L's arrived in the Philippines on August 4, 1988, and three weeks later they went to court for the adoption hearing where they learned, for the first time, that they were adopting both their child and Raymond. Later that day they contacted appellant who assured them that

she would handle the separation of the children upon their return.

Mrs. L left the Philippines after ten weeks due to illness and Mr. L returned five weeks later with their adopted child. Raymond did not return with Mr. L and he was never in the L's custody except for the appearances in the Philippine court.

In December 1988 the L's signed a Consent and Waiver form granting ACORN guardianship of Raymond for the purposes of adoption. Appellant filed a Petition for Guardianship in the circuit court and attached the waivers. The circuit court appointed counsel for Raymond who met with the L's on April 3, 1989, and, at that meeting the L's learned that Item 10 of the guardianship proceeding stated that they were placing Raymond for adoption "in part because the minor was too much to handle for them."

The L's then met with appellant and gave her a document revoking their waiver of the right of notice of further proceedings relating to Raymond's guardianship. The revocation, however, was never filed in the court proceedings. The L's also filed a motion requesting that the trial court amend its order directing the L's to pay for the legal services of the court appointed counsel for Raymond and direct ACORN to assume these costs.

The case was heard before a master on April 26, 1989, and a second hearing was held on May 16 in response to the L's petition concerning the allocation of costs and counsel fees. The background data set forth above incorporates the Master's fact-finding. In a comprehensive and thorough report, he recommended that ACORN and appellant be held jointly and severally liable for the costs and counsel fees incurred by the court appointed counsel based upon what the Master termed appellant's "... original deceits ... preposterous explanations together with her attempts to disassociate herself ... has utterly destroyed her credibili-

ty...." [1]

On July 10, 1989, while the Master's recommendations were still pending before the circuit court, appellant, through counsel, moved to intervene in the guardianship action and to file exceptions to the Master's recommendations. The trial court granted the motion and the exceptions were filed alleging that the Master lacked jurisdiction to hear the guardianship, that appellant was not a party and could not be assessed counsel fees, and that the record did not support the disposition.

Appellant requested a hearing, that her exceptions be sustained, and that she be awarded "such other and further relief as the nature of her cause may require." The hearing was held on February 22, 1990, and the matter was reduced to final judgment on July 2, 1990, and thereafter appealed to this Court.

### Jurisdiction

██ Article IV, Section 9 of the Maryland Constitution authorizes that "[t]he Judge or Judges of any Court may appoint such officers for their respective courts as may be found necessary." Courts & Judicial Proceedings Article, sec. 2–501(a) states that:

> The judges of the circuit court for a county may employ the ... masters ... necessary to conduct the business of the court.

The judges for the Circuit Court for Howard County issued an Order dated September 3, 1981, appointing Bernard A. Raum, Esq., Master in Chancery, subject to the supervision of the court. The Master is authorized to hear a variety of matters including "all ... adoption cases which may be referred to him by the clerk" and "such other

---

**1.** The Master also recommended that the court refer the matter to the Department of Licensing and to the State's Attorney for charges of perjury. The license held by ACORN was voluntarily relinquished; the court did not refer the case to the State's Attorney.

matters as may be referred to him by the judges of this court."

Maryland Rule 2–541, moreover, authorizes that Masters be appointed by the circuit court and provides that clerks of the court may refer certain matters to the Master as a matter of course and the court, on its own initiative, may order that non-jury issues be referred to a Master. The guardianship matter, which is a prelude to an adoption in cases involving a child placement agency, was clearly within the jurisdiction of Master Raum. His recommendation for sanctions, furthermore, is clearly authorized by Rule 2–541(d)(6).

## Assessment of Costs

■ Intervention in an ongoing controversy, whether by right or by leave of court, is a two-way street. The intervenor renders itself vulnerable to complete adjudication by the court of issues in litigation between the intervenor and the adverse party. It is said to assume the risk that its position will not prevail and that an order adverse to its interests may be entered. *See Schneider v. Dumbarton Developers, Inc.,* 767 F.2d 1007 (D.C.Cir.1985).

■ Maryland Rule 2–131(c) provides that special appearances are abolished and if an appearance, no matter how characterized, is in effect a general appearance, it will have the result of binding the party appearing in subsequent proceedings in the case. *Eastham v. Young,* 250 Md. 516, 243 A.2d 559 (1968); *Franciscus v. Franciscus,* 31 Md.App. 78, 354 A.2d 454 (1976).

■ The fact that appellant was not a party when the Master filed his recommendations is immaterial, because his findings have no finality or legal effect until the court implements them through an Order. Appellant intervened to argue her position that she should not be singled out and ordered to pay fees incurred by ACORN. From the time of her intervention, nothing precluded her from requesting a remand to the Master for the purpose of calling witnesses,

presenting evidence, or challenging the reasonableness of the fees sought. She did none of these things, but that does not alter the fact that she challenged the Master's findings and invoked the jurisdiction of the court by requesting affirmative relief. She did not question the court's jurisdiction over her which she may have done by a motion to dismiss under Md. Rule 2–322. Clearly, one seeking to participate in the subject matter of the appeal before final judgment is a party, after intervening, and is bound by the judgment entered.

The trial court's award of fees and costs is a matter of discretion and is not subject to change unless clearly erroneous. *Dent v. Simmons,* 61 Md.App. 122, 485 A.2d 270 (1985). The record as a whole supports the order issued.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.