*David A., et al. v. Karen S.*, No. 2481, September Term, 2018.  Opinion by Fader, C.J.

**FAMILY LAW – ATTORNEY'S FEES AND COSTS – DE FACTO PARENT**

A *de facto* parent is eligible for an award of attorney's fees and costs incurred in a child custody, visitation, or child support proceeding under § 12-103(a) of the Family Law Article on the same basis as a biological or adoptive parent.

**FAMILY LAW – ATTORNEY'S FEES AND COSTS – ASSESSMENT OF COUNSEL FEES**

In a custody, visitation, or child support proceeding, a court may award attorney's fees and costs against a non-parent intervenor in the proceeding under § 12-103(a) of the Family Law Article after considering (1) the financial status of each party; (2) the needs of each party; and (3) whether there was substantial justification for bringing, maintaining, or defending the proceeding.  Under § 12-103(c) of the Family Law Article, a court must assess attorney's fees and costs against a party who lacked substantial justification for prosecuting or defending the proceeding, without regard to whether the party is a parent.

**FAMILY LAW – ATTORNEY'S FEES AND COSTS – ASSESSMENT OF FEES**

The court did not abuse its discretion in ordering a non-party intervenor to pay attorney's fees and costs incurred by a *de facto* parent in a custody proceeding under § 12-103(a) of the Family Law Article where it based its award on its thorough consideration of the factors it was required to consider pursuant to § 12-103(b) of the Family Law Article and the particular facts of the case.

Circuit Court for Baltimore City
Case No. 24-D-17-000673

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2481

September Term, 2018

_____

DAVID A., ET AL.

v.

KAREN S.

_____

Fader, C.J.,
Meredith,
Raker, Irma S.
  (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Fader, C.J.

_____

Filed:  July 31, 2019

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

This appeal requires us to determine: (1) whether a *de facto* parent is eligible for an award of attorney's fees and costs incurred in a dispute over custody and visitation; and (2) whether such an award can be made against a non-parent who intervenes in such a dispute. We conclude that, under § 12-103(a)(1) of the Family Law Article (Repl. 2012; Supp. 2018), a *de facto* parent is eligible for such an award and an intervening non-parent can be ordered to pay such an award.

Appellants David and Jennifer A. ask us to determine whether the circuit court erred in ordering them to pay the attorney's fees incurred by the appellee, Karen S., in connection with a battle over custody of five-year-old A.W. ("Child").[1] The custody battle involved four at least nominally-distinct parties: (1) the A.s, Child's paternal grandparents;[2] (2) Ms. Karen S., Child's maternal grandmother ("Ms. Karen S."); (3) Matthew W., Child's father ("Father"); and (4) Sara S., Child's mother ("Mother"). After a custody hearing, the Circuit Court for Baltimore City issued a comprehensive order in which the court concluded, among other things, that Ms. Karen S. was entitled to an award of attorney's fees and costs against the A.s under § 12-103(a)(1). The court subsequently set the amount of the award at $57,289.32, the entire amount incurred by Ms. Karen S. (the "Fee Award").

The A.s challenge the Fee Award on five grounds. In addition to their contention that § 12-103(a)(1) authorizes an award of attorney's fees only by one parent against

---

[1] We use only the last initials of the parties to preserve the privacy of Child.

[2] Ms. A. is Child's paternal grandmother and Mr. A. is her husband.

another, the A.s argue that the circuit court erred in (1) ordering them to pay all of Ms. Karen S.'s attorney's fees and costs, rather than a portion of them; (2) determining that Ms. Karen S. had not waived her claim for attorney's fees; (3) finding that the A.s lacked substantial justification for bringing their claims; and (4) failing to reduce the Fee Award in light of sums the A.s had previously paid to support Child. Finding no error or abuse of discretion as to any of these determinations, we affirm.

## BACKGROUND

Father initiated this litigation in February 2017 by filing a complaint for sole legal and physical custody of Child, naming as defendants Ms. Karen S. and Mother. Two days later, Ms. Karen S. brought an ex parte emergency custody proceeding in Harford County, through which that court granted her temporary custody of Child. *See* Case No. 12-C-17-000450 (Cir. Ct. Harford County). The two actions were later consolidated in the Circuit Court for Baltimore City.

In his complaint, Father alleged that Mother was a drug user who "deliberately committed various acts of destruction . . . in the presence of [Child]" and was unfit to have custody. Father also alleged that Ms. Karen S. had taken Child from his residence, which had deprived Father of his parental rights, and that she refused to allow him or the A.s access to Child.

On April 5, 2017, the A.s moved to intervene. In their motion and their cross-complaint for custody, visitation, and child support, the A.s alleged that they had participated in raising Child, that Child had a deep attachment to them, and that they had provided financial support to Child, Father, and Mother. The A.s "den[ied] that [Father]

2

is not a fit parent," but sought "full legal and full physical custody of [Child], in the event that [Father] is found by this Court to be unfit for custody." The A.s also alleged that Ms. Karen S.'s home was not fit for Child and that Ms. Karen S. herself "is not a fit and proper person to have custody or visitation" with Child.[3]

### *The Trial*

In May 2018, the court held a four-day trial in which it heard testimony from, among others, Mother, Father, Ms. Karen S., Ms. A., and Mr. A. All parties except Mother were represented by counsel. Testimony revealed that Mother and Father had both abused drugs, had physical altercations with each other, relied on the A.s and Ms. Karen S. for financial support and childcare, and lacked steady employment. Mother testified that she had a drug addiction, but had been clean for 15 months. Father denied having a drug addiction.

The testimony at trial was generally positive with respect to the relationship between Child and both Ms. Karen S. and the A.s., as well as the support the grandparents had provided for and to Child. Notably for our purposes, Ms. A.'s trial testimony contradicted that of her deposition as well as the allegations of her cross-complaint in that she admitted at trial that: (1) Father is not fit to have custody of Child; and (2) Ms. Karen S. is fit to have custody. Ms. A. attributed the change in her testimony to "something wrong in communication with [her] counsel" during her deposition, but she acknowledged that she knew she was under oath at the time.

---

[3] The record extract compiled by the A.s contains an unsigned and undated amended cross-complaint. The docket does not reflect that this pleading was ever filed and we are uncertain why it appears in the extract or what role, if any, it played in the litigation. As a result, we have not considered the document in our analysis.

3

The A.s and Ms. Karen S. each testified at trial regarding the state of their respective finances. Mr. A. testified that he had paid cash for a home he bought for Father's family, that he earned "about $2,900,000" in gross income the previous year, and that he owned a beach property and other significant assets. By contrast, Ms. Karen S. testified that she had been forced to "cash[] out" her retirement assets to pay legal fees of approximately $19,500, and that she had no funds available to pay approximately $23,740 in outstanding legal fees.

In making her *pro se* closing argument, Mother admitted to her drug addiction and to her current unfitness to have custody over Child. She argued that the A.s should not have custody over Child because of their history of ignoring and enabling Father's ongoing drug addiction, which left Child in a "dangerous environment for three years," and she implored the court to "protect my son."

Ms. Karen S. argued that Mother and Father were both unfit and that it was in Child's best interest for her to have sole custody. Like Mother, Ms. Karen S. argued that the A.s had ignored signs of Father's addiction for years and continued to enable his addiction. Indeed, she observed, the A.s had contended that Father was a fit parent in supplemental interrogatory responses filed just five days earlier. Ms. Karen S. asked for custody of Child "just until these parents can get on their feet." She also requested that the court order the A.s to make "a contribution to [her] attorney's fees."

The A.s' closing argument, echoing Ms. A.'s testimony, departed from the positions they had taken leading up to trial in two critical respects. First, they admitted that Father was "unfit to have custody and there are a whole series of reasons why." Second, they

4

admitted that Ms. Karen S. is fit. They also, however, asked the court not to penalize them for having missed the signs of their son's addiction and sought shared custody of Child. The A.s also asked that the court not enter an award of attorney's fees against them, contending that they had been "very kind and good . . . in supporting this family" and "that they had substantial justification for participating in this litigation."

Before his own counsel's closing argument, Father made a statement in which he admitted, for the first time, that he had a drug addiction and required help to get treatment. His counsel then acknowledged Father's present unfitness and asked the court to implement the shared custody plan advocated by the A.s.

At the conclusion of trial, the court announced its findings and conclusions from the bench, including:

- Mother and Father both have drug addictions, but were at different stages in their recoveries. Both are unfit to have custody.

- Mother, who the court found to be credible, had been clean since February 2017 and was on the road to recovery. However, Mother had not "been clean for long enough" or established a long enough track record for the court to be convinced that it was in Child's best interest for her to have custody.

- Father, who the court did not find to be credible except for his belated admission that he was a drug addict, had not yet begun his recovery.

- Ms. Karen S. and her husband, Mr. S., were both credible, cared deeply for Child, and were capable of taking care of him. Ms. Karen S. had acted in Child's best interests in removing him from the dangerous environment he had been living in and obtaining a court order allowing her to take over his care.

- For the last year, Ms. Karen S. had been Child's *de facto* parent.

- As a result of the parents' addictions, exceptional circumstances existed to award custody to a non-parent.

5

- Although the A.s love Child, the court found much of their testimony incredible, which raised doubts regarding their "character and reputation." The court identified a number of inconsistencies in their testimony and in the positions they had taken in the case, including as to their alleged lack of awareness of Father's addiction, their prior claims that Father was fit and that Ms. Karen S. was unfit, and Ms. A.'s testimony regarding signing documents under oath that included statements with which she disagreed.

- Although the A.s were in position to give Child "an exceptional financial future," Ms. Karen S. and her husband "can meet his every need . . . ."

The court reviewed all of the required statutory factors and then awarded Ms. Karen S. sole legal custody and primary physical custody of Child, with the A.s having visitation every other weekend and on certain holidays. The court allowed Mother to have unsupervised visitation with Child as long as she continues to seek treatment and have clean drug tests, and stated that Father would eventually be allowed the same access if he also receives treatment and has consistent clean drug tests.

### The Attorney's Fees Award

In a subsequent written order that restated many of these findings and conclusions, the court also concluded that Ms. Karen S. was entitled to an award of attorney's fees and costs. In a simultaneously-filed memorandum opinion, the court identified the three factors it was required to consider: "(1) the financial status of each party; (2) the needs of each party; and (3) whether there was substantial justification for bringing, maintaining, or defending the proceeding." Reviewing each factor in detail, the court made the following findings and conclusions:

- Father and Mother had both been supported by their respective parents and did not have the financial ability to pay any award of attorney's fees.

6

- The A.s "maintain an upper-class standard of living" and own "numerous and substantial financial assets." Ms. Karen S. "maintains a middle-class standard of living" that "pales in comparison" to the financial status of the A.s.

- Ms. Karen S. "is in need of and is entitled to the reimbursement of the fees incurred in this matter." She "has exhausted most of her retirement savings for this case" and still owes approximately $23,000 to her counsel. She "is in need due to the financial burden of defending this case."

- Ms. Karen S. was justified in defending this proceeding. When the lawsuit was filed, she was Child's *de facto* parent and there was no evidence that she was unfit.[4] In light of the evidence regarding the dangers to Child if he had been allowed to stay in the custody of Father—even under the supervision of the A.s—Ms. Karen S. "had more than a substantial basis for defending the action."

- The A.s "did not have substantial justification for bringing the action." Until their opening statement at trial, they claimed that Father was fit to have custody. The court found their testimony explaining that contention to be incredible and so doubted "the veracity of their stated reason to intervene in this case." The court concluded that their intervention had "led to a substantial amount of additional preparation and work for [Ms. Karen S.]'s counsel."

The court concluded that Ms. Karen S. was entitled to an award of attorney's fees and costs to be paid by the A.s. The court ordered her to submit an affidavit and memorandum "with the final statement of account balance and an explanation of all costs, along with a description of the complexity of this case and a summary of her experience." The court reserved judgment regarding the reasonableness of the fees and costs.

Ms. Karen S.'s counsel submitted the required affidavit along with a detailed time ledger in support of a final claim for $57,289.32 in attorney's fees and costs. The A.s

---

[4] The court's memorandum states that "[t]here was never a claim, by any party, that Defendant [Ms. Karen S.] was unfit. On the contrary, [the A.s] offered testimony at trial that she provided excellent care for the minor child." We presume that the court's comments were addressed to the positions of the parties at trial, when the A.s conceded Ms. Karen S. is fit, rather than throughout the litigation leading up to trial, when they maintained that she was not.

opposed the request, arguing that Ms. Karen S. failed to preserve her claim for attorney's fees, that she lacked a statutory basis for the claim, that she could not recover all of her fees from them, and that the court should give them a credit for amounts they had previously paid to support Child and Mother. In an order dated August 16, the court awarded attorney's fees and costs in favor of Ms. Karen S. and against the A.s for the full amount sought by Ms. Karen S.

The A.s appealed. In their brief, the A.s challenge only the court's Fee Award. They do not challenge the court's decisions regarding custody or visitation or any of its related findings. Ms. Karen S. did not file a brief and has not participated in this appeal.

## DISCUSSION

"The trial court's award of fees and costs is a matter of discretion and is not subject to change unless clearly erroneous." *In re Guardianship No. 89-CA-9865 in Circuit Court for Howard County*, 88 Md. App. 191, 197 (1991). In a child custody proceeding, "[a]n award of attorney's fees will not be reversed unless a court's discretion was exercised arbitrarily or the judgment was clearly wrong." *Petrini v. Petrini*, 336 Md. 453, 468 (1994). Abuse of discretion "occurs when a trial judge . . . acts beyond the letter or reason of the law." *Garg v. Garg*, 393 Md. 225, 238 (2006) (quoting *Jenkins v. State*, 375 Md. 284, 295-96 (2003)). Moreover, "an exercise of discretion based upon an error of law is an abuse of discretion." *Brockington v. Grimstead*, 176 Md. App. 327, 359 (2007); *see also Arrington v. State*, 411 Md. 542, 552 (2009) ("[T]he court's discretion is always tempered by the requirement that the court correctly apply the law applicable to the case.").

8

**I.     MS. KAREN S. DID NOT WAIVE OR FAIL TO PRESERVE HER CLAIM FOR ATTORNEY'S FEES AND COSTS.**

The A.s contended below and in their appellate brief that Ms. Karen S. waived her claim for attorney's fees and costs by failing to comply with the requirement of Rule 2-703(b) that such a claim be included in a party's initial pleading. At oral argument, however, they conceded that Rule 2-703 does not apply here because Rule 2-702(b) expressly provides that the Chapter 700 rules "do not apply to claims for attorneys' fees [] in an action under Code, Family Law Article where an award of attorneys' fees does not depend on the applicant's having prevailed in the action or on any particular claim or issue in the action . . . ."

The A.s nonetheless contend that Ms. Karen S. should be precluded from pursuing attorney's fees and costs because she raised her claim too late. We disagree. Although Ms. Karen S. did not expressly seek attorney's fees from the A.s in her answer to their crossclaim, her claim was not a surprise. Both parties had the opportunity to present evidence and arguments regarding her claim at trial and again in post-trial briefing and both parties did so. We discern no abuse of discretion in the circuit court's determination that Ms. Karen S. had not waived or failed to preserve her claim for attorney's fees and costs.

**II.     THE COURT WAS AUTHORIZED TO AWARD COUNSEL FEES AND COSTS UNDER § 12-103 OF THE FAMILY LAW ARTICLE.**

The A.s argue that Ms. Karen S. was not eligible for an award of attorney's fees and costs under § 12-103(a)(1) of the Family Law Article because such fees may be awarded only as between parents, not grandparents. Determining whether they are right requires an examination of the language of the statute, which provides, in relevant part:

(a) The court may award to either party the costs and counsel fees that are just and proper under all the circumstances in any case in which a person:

> (1) applies for a decree or modification of a decree concerning the custody, support, or visitation of a child of the parties; . . . .

(b) Before a court may award costs and counsel fees under this section, the court shall consider:

> (1) the financial status of each party;
>
> (2) the needs of each party; and
>
> (3) whether there was substantial justification for bringing, maintaining, or defending the proceeding.

(c) Upon a finding by the court that there was an absence of substantial justification of a party for prosecuting or defending the proceeding, and absent a finding by the court of good cause to the contrary, the court shall award to the other party costs and counsel fees.

Fam. Law § 12-103.

When interpreting a statute, "[w]e assume that the legislature's intent is expressed in the statutory language and thus our statutory interpretation focuses primarily on the language of the statute to determine the purpose and intent of the General Assembly." *Phillips v. State*, 451 Md. 180, 196 (2017). Thus, "we begin 'with the plain language of the statute, and ordinary, popular understanding of the English language dictates interpretation of its terminology.'" *Blackstone v. Sharma*, 461 Md. 87, 113 (2018) (quoting *Schreyer v. Chaplain*, 416 Md. 94, 101 (2010)). In reading the plain language, "we will not add or delete words from the statute." *Melton v. State*, 379 Md. 471, 477 (2004). "We read 'the statute as a whole to ensure that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory.'" *Conaway v. State*, ___ Md. ___, No. 69, Sept. Term 2018, 2019 WL 3024706, at *9 (July 11, 2019) (quoting *Ingram v. State*, 461 Md. 650, 661 (2018)). "In parsing whether plain meaning or

10

ambiguity is the case, we view the relevant statutory scheme as a whole, rather than seizing on a single provision." *Conaway*, 2019 WL 3024706, at *9.

If the plain language of the statute is "ambiguous and subject to more than one reasonable interpretation," or "become[s] ambiguous when read as part of a larger statutory scheme," we "must resolve the ambiguity by searching for legislative intent in other indicia, including the history of the legislation and other relevant sources intrinsic and extrinsic to the legislative process." *Town of Forest Heights v. Maryland-Nat'l Capital Park & Planning Comm'n*, 463 Md. 469, 479 (2019) (quoting *Gardner v. State*, 420 Md. 1, 9 (2011)). In doing so, we "consider the consequences resulting from one meaning rather than another, and adopt that construction which avoids an illogical or unreasonable result, or one which is inconsistent with common sense." *Blackstone*, 461 Md. at 114 (quoting *Spangler v. McQuitty*, 449 Md. 33, 50 (2016)).

As noted, § 12-103(a)(1) allows an award of fees and costs "in any case in which a person . . . applies for a decree . . . concerning the custody . . . of a child of the parties." Focusing on the last phrase, the A.s argue that Ms. Karen S. "has no right under this statute to claim counsel fees, because [Child] is her grandchild, not her child. Similarly, the [A.s] have no exposure for counsel fees, because [Child] is their grandchild, not their child." Thus, the A.s argue, the plain language of the statute establishes that "a party can only recover fees when custody of the party's child is involved. The word 'grandchild' is not found in the statute."

We conclude that the A.s' narrow interpretation of the statute is inconsistent with its language, context, and purpose. We will address separately the A.s' contentions that

11

the statute does not authorize an award of attorney's fees and costs (1) in favor of Ms. Karen S., because Child is not her child and (2) against the A.s, for the same reason.

## A. Section 12-103(a)(1) Authorizes an Award of Attorney's Fees in Favor of Ms. Karen S.

Ms. Karen S. is eligible for an award of fees under the plain language of § 12-103(a)(1) because the circuit court found that she is Child's *de facto* parent. The A.s have not challenged that finding on appeal nor have they advanced any argument as to why a *de facto* parent is not eligible for an award of attorney's fees and costs under § 12-103(a)(1).

We recently summarized *de facto* parent status as follows: "A putative *de facto* parent transcends third party status when she can establish, first and foremost, 'that the biological or adoptive parent consented to and fostered the petitioner's formation and establishment of a parent-like relationship with the child.'" *Kpetigo v. Kpetigo*, 238 Md. App. 561, 573 (2018) (quoting *Conover v. Conover*, 450 Md. 51, 74 (2016)). Such a "parent-like relationship" requires that "the putative *de facto* parent and the child must have lived together in the same household, with the *de facto* parent taking on real parenting responsibilities over a sustained period of time." *Kpetigo*, 238 Md. App. at 573.[5] The "*de*

---

[5] As set forth in *Conover*, to qualify as a *de facto* parent, the proponent must show that (1) "the biological or adoptive parent consented to, and fostered, the petitioner's formation and establishment of a parent-like relationship with the child"; (2) proponent and child "lived together in the same household"; (3) proponent "assumed obligations of parenthood by taking significant responsibility for the child's care, education and development, including contributing towards the child's support, without expectation of financial compensation"; and (4) proponent "has been in a parental role for a length of time sufficient to have established with the child a bonded, dependent relationship parental in

12

*facto* parenthood test measures the relationship between the putative *de facto* parent and the child . . . without reference to the parent's characteristics or the relationship's origins." *Id*. at 574. "What matters . . . is the relationship between the putative *de facto* parent and the child and the child's best interests, not the relationship's title or consanguinity." *Id.* at 575.

Once established, such a relationship makes a *de facto* parent "distinct from other third parties." *Conover*, 450 Md. at 85. *De facto* parent status effectively elevates a third party to equal footing with biological parents for the purpose of determinations of custody and visitation, providing such an individual "standing to contest custody or visitation" without any requirement to "show parental unfitness or exceptional circumstances before a trial court can apply a best interests of the child analysis." *Id.*; *see also id.* at 71-72 (discussing Delaware's *de facto* parenthood case law, specifically that a *de facto* parent "*would also be a legal 'parent'*" with "a co-equal 'fundamental parental interest' in raising" the child) (quoting *Smith v. Guest*, 16 A.3d 920, 931 (Del. 2011)) (emphasis in *Conover*). In other words, once a party is a *de facto* parent, his or her status in a dispute over custody or visitation is equal to that of a biological parent, adoptive parent, or other *de facto* parent because, as among those individuals, a court rendering a custody decision

---

nature." 450 Md. at 74. Here, the court did not expressly review these factors or identify its rationale for concluding that Ms. Karen S. met all of those factors. We need not review that determination, however, because the A.s do not challenge it on appeal. We do not reach any conclusion regarding whether the circuit court's determination that Ms. Karen S. is a *de facto* parent was legally correct.

must consider only the best interest of the child, not any differences in the status of the parents.

Here, the circuit court found that Ms. Karen S. "is, and has been the *de facto* parent of [Child] since February, 2017." Ms. Karen S. thus has the status of a parent and is eligible to receive an award of attorney's fees and costs under § 12-103(a)(1).

**B.      Section 12-103(a)(1) Authorizes an Award of Attorney's Fees Against the A.s.**

The A.s also argue that § 12-103(a) does not authorize an award of attorney's fees against them because Child is not their child. Their argument focuses on two phrases from the statute we emphasize here:

> (a) The court may award to *either party* the costs and counsel fees that are just and proper under all the circumstances in any case in which a person:

> > (1) applies for a decree or modification of a decree concerning the custody, support, or visitation of a *child of the parties* . . .

Fam. Law § 12-103(a) (emphasis added). The A.s contend that these phrases dictate that awards of attorney's fees and costs are available only in disputes between two parents.

### 1.      The Statutory Language Is Ambiguous as to Whether the General Assembly Intended to Authorize an Award of Attorney's Fees and Costs Against a Non-Parent Intervenor.

We begin our analysis, as we must, with the "normal, plain meaning of the language of the statute." *Wash. Gas Light Co. v. Md. Pub. Serv. Comm'n*, 460 Md. 667, 682 (2018) (quoting *Shealer v. Straka*, 459 Md. 68, 84 (2018)). Were we to focus exclusively on the two phrases on which the A.s rely, divorced from their context, we might agree with them. "Either" generally means "one or the other of two people or things." *New Oxford American Dictionary*, "either," at 557 (3d ed. 2010); *Merriam-Webster's Collegiate Dictionary*,

14

"either," at 399 (11th ed. 2014) ("being the one and the other of two: EACH."). The A.s would thus have us interpret the legislature's use of "either" in § 12-103(a) as an indication of an intent to limit the statute's applicability to two-party disputes, and to further presume that those two parties must be parents. They bolster that view by reference to the other phrase on which they rely. They argue that by limiting the availability of an award to a situation in which the dispute concerns "a child of the parties," the General Assembly intended to authorize fee shifting only between parents. That, they contend, is because children are only children of their parents, not anyone else.

Viewing the statutory language in context, however, it is at least ambiguous as to whether it extends to non-parent intervenors. First, we know that custody and visitation disputes are not necessarily limited to two parties, *see, e.g.*, *Burak v. Burak*, 455 Md. 564, 626 (2017) (holding that grandparents who make proper prima facie showing are proper intervening parties in a custody dispute between parents); *Powers v. Hadden*, 30 Md. App. 577 (1976) (custody dispute between grandparents, mother, and father), or to biological parents, *see, e.g.*, *Conover*, 450 Md. at 85 (recognizing standing of a *de facto* parent to challenge custody).[6] Moreover, even if limited to two, the statute does not identify *which*

---

[6] *See also De Angelis v. Kelley*, 184 Md. 183, 186 (1944) (recognizing that a third-party has a right to participate in custody litigation); *Green v. Green*, 188 Md. App. 661, 680 (2009) (granting "primary, residential custody" of child to an aunt and uncle); *Karen P. v. Christopher J.B.*, 163 Md. App. 250, 278 (2005) (custody granted to non-biological father); *Pastore v. Sharp*, 81 Md. App. 314, 322-25 (1989) (custody awarded to child's aunt and uncle where child would lack stability if placed with the biological mother); *Newkirk v. Newkirk*, 73 Md. App. 588, 595 (1988) (awarding custody of teenage children to half-brother, rather than biological father); *Ross v. Hoffman*, 280 Md. 172, 179 (1977) (denying custody to biological mother in favor of a third-party); *Ross v. Pick*, 199 Md. 341,

15

two parties it covers.  Is that, as the A.s would have it, only biological parents?  Or is it any two parties who dispute custody, visitation, and child support?  Or any two parties who seek attorney's fees from each other, regardless of how many parties are involved in the dispute?

In the context of the entire provision and the broader statutory scheme, we find no indication that the legislature intended the word "either" as a mechanism to limit the coverage of the statute to fewer than all parties to a custody or visitation dispute.  *See State v. Bey*, 452 Md. 255, 266 (2017) ("We, however, do not read statutory language in a vacuum, nor do we confine strictly our interpretation of a statute's plain language to the isolated section alone.").  Had that been the General Assembly's intent, there were far easier and clearer ways to accomplish it, including by simply substituting "either parent" for "either party."  *See Ibru v. Ibru*, 239 Md. App. 17, 42 (2018), *cert. denied*, 462 Md. 570 (2019) (in analyzing the plain language of statutory terms, we recognize that "the Legislature is presumed to have meant what it said and said what it meant") (quoting *Toler v. Motor Vehicle Admin.*, 373 Md. 214, 220 (2003)).

---

352 (1952) (finding "no sufficient reason" to award custody to mother where a third-party had cared for the child for ten years); *Dietrich v. Anderson*, 185 Md. 103, 116 (1945) (denying father's complaint for custody where child had been living with foster parents for five years); *Trenton v. Christ*, 216 Md. 418, 423 (1958) (affirming award of custody to grandparents and finding a "genuine risk to th[e] child's wellbeing" if removed from the grandparents' care); *Piotrowski v. State on Application of Kowalek*, 179 Md. 377, 383 (1941) (determining that "custody and control of the child" was properly with the maternal grandparents).

Second, the same sentence in § 12-103(a) identifies the types of disputes giving rise to eligibility for attorney's fees as any in which "a person" applies for a decree of custody, visitation or child support. Again, if it were really the intent of the General Assembly to limit eligibility for attorney's fees and costs to parents, it would have been much clearer to use the word "parent" instead of "person." It is difficult to imagine a broader word choice for this provision than "person." *See, e.g.*, *New Oxford American Dictionary*, "person," at 1307 ("a human being regarded as an individual"; "used in legal or formal contexts to refer to an unspecified individual"). "[W]here . . . a statute is phrased in broad general terms, it suggests that the Legislature intended that the provision to be capable of encompassing circumstances and situations which did not exist at the time of the enactment." *Ali v. CIT Tech. Fin. Servs., Inc.*, 416 Md. 249, 268 (2010) (quoting *Kindley v. Governor of Md.*, 289 Md. 620, 625 (1981)).

Third, read in context, we do not find "child of the parties" to be an unambiguous reference to a biological parent-child relationship. The A.s have not pointed us to any authority defining the phrase to have that meaning or to exclude quasi-parental relationships like the A.s claimed to have and want with Child. Proceedings regarding custody, visitation, or child support will necessarily involve parties who have or claim some parental or quasi-parental interest in the child(ren) at issue. Here, for example, all

17

five parties claimed to have provided significant care for Child in the past and sought some measure of shared or sole custody of Child going forward.[7]

Fourth, the statute does not expressly exclude parties to custody, visitation, or child support proceedings who are not parents from its fee shifting provisions. As discussed further below, we cannot discern from the statute itself any intent to do so, nor can we think of any policy reason to do so, and we are bound to reject interpretations that are "illogical or unreasonable" or "inconsistent with common sense." *Blackstone*, 461 Md. at 114 (quoting *Spangler*, 449 Md. at 50).

In sum, we find the statutory language to be at least ambiguous as to whether the General Assembly intended to permit an award of attorney's fees to be made against a party to a custody, visitation, or child support proceeding who is not a parent of the child at issue. We therefore turn our attention to our other tools of statutory analysis, including the "statute's legislative history, the context of the statute within the broader legislative scheme, and the relative rationality of competing constructions." *Agnew v. State*, 461 Md. 672, 679 (2018) (quoting *Harrison-Solomon v. State*, 442 Md. 254, 265-66 (2015)). Mindful that "our goal in statutory construction analysis is to discern and carry out the

_____

[7] Even when the General Assembly has used the word "parent" in a statutory scheme, it has sometimes defined that term broadly enough to encompass individuals other than biological parents. *See, e.g.*, Md. Code Ann., Educ. § 8-412(a)(5) (defining "parent" to include "[a] child's natural parents," "[a] child's adoptive parents," "[a] guardian," "[a] person acting as a parent of a child such as a relative or a stepparent with whom a child lives," "[a] foster parent with whom a child lives . . .," or "[a]ny other individual who is legally responsible for a child's welfare"); Md. Code Ann., Health-Gen. § 18-4A-01 (defining "parent" as a "natural or adoptive parent," "guardian," or "[a]ny other person who, under court order, is authorized to give consent for a minor").

18

intent of the Legislature," *Ingram v. State*, 461 Md. 650, 663 (2018), we also consider the "relationship [of § 12-103] to earlier and subsequent legislation, and other material that fairly bears on the fundamental issue of legislative purpose or goal, which becomes the context within which we read the particular language before us in a given case," *Town of Forest Heights*, 463 Md. at 479 (quoting *Blackstone*, 461 Md. at 114).

### 2. Legislative History Supports the Court's Award of Attorney's Fees and Costs Against the A.s.

The General Assembly enacted Article 16 § 5A, the predecessor to § 12-103, in 1967. *See* 1967 Md. Laws, ch. 488. The statute as originally enacted provided that "[i]n all cases where a person makes an application for a decree or modification of a decree with respect to the custody . . . concerning a child or children of the parties . . . the court . . . may make such award of costs and counsel fees to either party as shall be just and proper under all the circumstances." *Id.* In 1984, in connection with code revision, the General Assembly recodified the provision, using language substantially identical to how it appears today, as § 12-103(a) of the new Family Law Article. Indeed, the only change to any aspect of § 12-103 since 1984 came with the addition of § 12-103(c) in 1993. 1993 Md. Laws, ch. 514. We discuss that provision in further detail below. We have not identified any legislative history from the 1967, 1984, or 1993 enactments that sheds light on the specific inquiry before us.

The legislative history of a related provision of the Family Law Article, however, provides strong support for the circuit court's Fee Award. Section 1-202 of the Family Law Article authorizes a court to appoint a lawyer to serve as a child advocate or best

19

interest attorney.  Until 2008, that statute permitted a court to "impose against either or both parents counsel fees."  *Taylor v. Mandel*, 402 Md. 109, 129 (2007) (quoting former Fam. Law § 1-202).  In *Taylor*, the Court of Appeals overturned a circuit court's award of guardian ad litem fees against a grandparent, holding that the statute's authorization was expressly limited to "either or both parents," and that "[t]he plain language is that the court can impose fees against parents, not grandparents."  *Id.*

The following year, in direct response to *Taylor*, the General Assembly amended § 1-202 "[f]or the purpose of authorizing a court to impose against one or more parties certain counsel fees for the representation of a minor child in certain proceedings."  2008 Md. Laws, ch. 488; Fiscal & Policy Note on HB 149 ("This bill is intended to modify the result of the Court of Appeals decision in *Taylor v. Mandel*[.]").  Proponents of the bill sought to reduce the "unfair advantage to grandparents and others in custody and visitation cases against parents."  Mar. 20, 2008 Testimony from Del. Kathleen M. Dumais in Support of House Bill 149.  The Family and Juvenile Section Council of the Maryland State Bar Association also wrote that *Taylor* "has created a huge problem for the trial courts" because "[m]any custody and visitation cases . . . pending in several of our busiest courts, are 'third-party' custody or visitation cases in which a relative or other non-parent is a party to the action."  Amending the language, the Council wrote, "would correct the apparent inadvertent oversight in the original drafting of § 1-202[.]"  *Id.*  Moreover, the Council remarked, "[c]hildren who are the subject of custody cases where one or both of the parties are not the parents deserve the same services as children whose parents are embroiled in what would be termed traditional custody cases."  *Id.*

For the express purpose of expanding the scope of § 1-202 to permit the award of fees and costs against grandparents and other non-parents, the General Assembly thus replaced the provision of the law allowing imposition of counsel fees "against either or both parents" to now authorize an award "against one or more parties to the action." 2008 Md. Laws, ch. 488. In doing so, the General Assembly brought § 1-202 more in line with § 12-103(a), which also authorizes an award to a "party," rather than a "parent." In light of the similarities in the two provisions and the General Assembly's swift and definitive reaction to the *Taylor* decision, we consider that legislative history to be instructive here.

### 3. The Legislative Purpose Supports the Court's Award of Attorney's Fees and Costs Against the A.s.

Also compelling is our understanding of the purpose of § 12-103(a). Maryland's appellate courts have broadly construed § 12-103(a) and its predecessor to give the court broad "power to award a fee at any time in child custody and support cases." *McCally v. McCally*, 251 Md. 735, 736-37 (1969); *accord Peterman v. Peterman*, 14 Md. App. 310, 315 (1972) (holding that the court may award "costs and counsel fees not covered or contemplated by a separation agreement").[8] Unlike fee shifting provisions in which a

---

[8] This Court recently explained the history behind the adoption of what became § 12-103 in *Poole v. Bureau of Support Enf't*, 238 Md. App. 281, 289-92 (2018). Before the adoption of that provision, the Court of Appeals had "limited a wife's ability to recover attorney's fees in a child support action," requiring the wife to "bring a separate action at law to recover those fees." *Id.* at 289-90. The General Assembly responded by enacting Chapter 488 of the 1967 Laws of Maryland, the predecessor to § 12-103, which "expanded the authority of courts presiding over divorce and custody cases to permit awards of attorney's fees in 'any proceeding.' As a result, equity courts had the power to award a fee 'at any time' in child custody and support cases." *Id.* at 290 (quoting *McCally*, 251 Md. at 736-37).

21

party's eligibility for an award depends on whether it prevailed in the action,[9] § 12-103(a) does not even require consideration of which party prevailed, *see* Md. Rule 2-702(b) (describing fee shifting provisions in Family Law Article as not requiring that the receiving party "prevailed in the action or on any particular claim or issue in the action"). Instead, the statute provides broad authority for the court to award attorney's fees and costs in a custody, visitation, or child support proceeding "that are just and proper under all the circumstances," subject only to the requirement that the court must first "consider" three things: (1) "the financial status of each party;" (2) "the needs of each party;" and (3) whether each party had a substantial justification for its position in the proceeding. *Henriquez v. Henriquez*, 413 Md. 287, 298 (2010); Fam. Law § 12-103(a)(1), (b). None of these factors hinges on whether a party is also a parent.

Section 12-103(a) promotes a number of important policy considerations, including: (1) giving more parties who might not be able to afford counsel access to counsel in custody, visitation, and child support proceedings because of the prospect that counsel might recover fees from another party, *see Henriquez v. Henriquez*, 185 Md. App. 465, 484 (2009) (acknowledging the "important policy considerations" promoted by allowing an award of attorney's fees to an entity providing pro bono services in family law cases), *aff'd*,

<hr />

[9] *See, e.g.*, Md. Code Ann., Lab. & Empl. § 3-427(d) (Maryland Wage and Hour Law); Md. Code Ann., Lab. & Empl. § 3-507(b) (Wage Payment and Collection Act); Md. Code Ann., Com. Law § 13-408(c) (Consumer Protection Act); Md. Code Ann., Com. Law § 14-1502(l) (Automotive Warranty Enforcement Act); Md. Code Ann., Gen'l Prov. § 3-401(d) (Open Meetings Act); Md. Code Ann., Gen'l Prov. § 4-401(b) (Maryland Public Information Act); 42 U.S.C. § 1988(b) (Civil Action for Deprivation of Rights).

413 Md. 287 (2010); (2) helping to ensure that one party to such a proceeding is not incentivized to abuse his or her resource advantage or prevail based on a disparity of resources, *see Broseus v. Broseus*, 82 Md. App. 183, 201 n.9 (1990) (noting, in the course of affirming award of attorney's fees to wife under § 12-103, that husband had allegedly closed all of the couple's bank accounts, thereby denying wife the ability to use marital assets to pay her attorney's fees); (3) disincentivizing parties from engaging in conduct that "produce[s] protracted litigation," *see Frankel v. Frankel*, 165 Md. App. 553, 590 (2005) (upholding award under § 12-103 premised on a party's conduct that "produced protracted litigation"); and (4) enabling courts to make an equitable determination regarding who should bear the cost of such disputes, including but not limited to accounting for the interests of the child(ren) for whom one or more of the parties will be responsible, *Petrini v. Petrini*, 336 Md. 453, 468 (1994) (stating that the circuit court appropriately considered "the benefit to the child of awarding attorney's fees to the mother" in awarding fees).

Notably, all of these considerations apply regardless of whether the party who is potentially responsible to pay fees and costs is a parent. Parents and non-parents alike advocate, require other parties to respond to their claims, engage in discovery, and generally add to the litigation burden of all other parties. Permitting differences in wealth to drive different outcomes in custody, visitation, and child support cases is equally odious regardless of whether the disadvantaged party is a parent or a non-parent. Section 12-103(a) seeks to avoid that result by allowing the court, at any time, to make a "just and proper" award of attorney's fees and costs based, at least in part, on the respective resources

and needs of the parties. That provision cannot serve its full purpose if it applies only to a subset of parties to a proceeding.

Furthermore, the A.s' interpretation of § 12-103(a) would have the rather odd result of advantaging non-parents over parents in custody, visitation, and child support proceedings by (1) absolving only non-parents of any potential financial responsibility for taking meritless positions and (2) permitting only them to take advantage of their wealth to increase the expense of the litigation for the other parties without the possibility of fee shifting. We see no indication that the General Assembly intended to afford non-parent intervenors such a privileged position over parents.

Finally, § 12-103(a)(1) allows a court to ensure that the child who is the subject of a dispute is not further disadvantaged as a result of the dispute by leaving the party or parties who have custody or visitation with inadequate resources to provide for the child. *Petrini*, 336 Md. at 468. Here, Ms. Karen S., whose income is modest in comparison to the A.s, had to use her retirement savings to fund a portion of her legal fees. Because the effect on the resources of the party receiving custody or visitation is the same, regardless of whether the other parties to the dispute are parents or non-parents, the statutory purpose is best achieved if all parties are susceptible to an award of attorney's fees and costs.

In sum, an interpretation of § 12-103(a)(1) that makes an intervening non-parent potentially responsible for an award of attorney's fees and costs on the same basis as a parent is most consistent with the purpose of the statute as well as with logic and common sense. We therefore conclude that the circuit court correctly determined that the statute permits an award of attorney's fees against the A.s. as non-parent intervenors.

24

## C. Section 12-103(c) Authorizes an Award of Attorney's Fees and Costs Against the A.s.

In the alternative, even if the court lacked authority to award attorney's fees and costs against the A.s under § 12-103(a)(1), it had that authority under § 12-103(c), which provides: "Upon a finding by the court that there was an absence of substantial justification of a party for prosecuting or defending the proceeding, and absent a finding by the court of good cause to the contrary, the court shall award to the other party costs and counsel fees." Subsection (c) unambiguously makes any "party" who prosecutes or defends a proceeding without substantial justification responsible for paying the costs and counsel fees of another "party." Here, the A.s and Ms. Karen S. were all parties to the proceeding, the court found that the A.s lacked substantial justification for prosecuting it, and so the court was required to award attorney's fees and costs against the A.s.

The A.s contend that the court erred in finding that they lacked substantial justification for bringing their claim in this proceeding because they succeeded in winning visitation, thus providing them "significant access to [Child]." We find no merit in this contention.

We "will affirm a finding of bad faith or substantial justification unless 'it is clearly erroneous or involves an erroneous application of law.'" *State v. Braverman*, 228 Md. App. 239, 260 (2016) (quoting *Inlet Assocs. v. Harrison Inn Inlet, Inc.*, 324 Md. 254, 267 (1991)). Substantial justification under § 12-103 requires the court to "assess whether each party's position was reasonable." *Davis v. Petito*, 425 Md. 191, 204 (2012); *see also id.* at 204 n.8 (noting that the United States Supreme Court, in a different context, interpreted

25

"substantial justification" to mean having a "reasonable basis both in law and fact") (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). Whether a party prevailed at trial "is a sufficient, but not a necessary, element of substantial justification." *Id.* at 203; *see also* Rule 2-702(b) (stating that awards of fees and costs under the Family Law Article do not require "having prevailed in the action or on any particular claim or issue in the action").

The A.s' contention that they prevailed at trial because they received visitation with Child is an exercise in revisionist history. The A.s did not prevail on either of their two primary requests for relief—that Father retain custody or, in the alternative, that they be awarded sole custody—and the court largely rejected their testimony, including as to the reason for their intervention, and found them to be incredible. The record supports that skepticism. We find no error or abuse of discretion in the circuit court's conclusion that the A.s lacked substantial justification for prosecuting this proceeding.

### III. THE COURT DID NOT ERR OR ABUSE ITS DISCRETION IN ORDERING THE A.S TO PAY THE FEES AND COSTS INCURRED BY MS. KAREN S.

The A.s contend that the circuit court erred in two other respects in connection with the Fee Award. First, they contend that the court erred in ordering them to pay the entire amount of Ms. Karen S.'s fees and costs, rather than the subset of those fees and costs for which they were "responsible." Second, they contend that the court erred in declining to consider their past support for Child in awarding fees and costs against them. Finding no merit in either of these contentions, we affirm.

26

**A.** **The Circuit Court Did Not Err in Ordering the A.s to Pay Ms. Karen S.'s Attorney's Fees and Costs.**

The A.s argue that the court erred in ordering them to pay attorney's fees and costs for which they were not directly responsible. Instead, they claim, the court was required to "parse the legal fees attributable to actions by the [A.s], as opposed to other parties," and should have ordered them to pay only their share. We disagree that the court was required to engage in that exercise.

As discussed, the three factors the court was required to consider in determining whether to award attorney's fees are: (1) "the financial status of each party"; (2) "the needs of each party"; and (3) "whether there was substantial justification for bringing, maintaining, or defending the proceeding." Fam. Law § 12-103(b). "[T]he trial court has significant discretion in applying the [§ 12-103(b) factors] to 'decid[e] whether to award counsel fees and, if so, in what amount.'" *Ruiz v. Kinoshita*, 239 Md. App. 395, 438 (2018) (quoting *Malin v. Mininberg*, 153 Md. App. 358, 435-36 (2003)) (alteration in *Ruiz*).

In addition to evaluating the § 12-103(b) factors, the amount of attorney's fees awarded "must be reasonable, taking into account such factors as labor, skill, time, and benefit afforded to the client, as well as the financial resources and needs of each party." *Petrini*, 336 Md. at 467. Reasonableness "is a factual determination within the sound discretion of the court," and "[t]he party requesting fees has the burden of providing the court with the necessary information to determine the reasonableness of its request." *Nova Research, Inc. v. Penske Truck Leasing Co.*, 405 Md. 435, 448 n.4 (2008).

27

Here, the court appropriately applied the § 12-103(b) factors and assessed the reasonableness of the fees before making its determination.[10] With respect to "the financial status of each party," the court found that neither Mother nor Father had the ability to pay. And while the A.s had "substantial financial assets," Ms. Karen S. "works hard to maintain an acceptable standard of living" and her "financial status pales in comparison" to that of the A.s. Similarly, the court found that the A.s were not in financial need but that Ms. Karen S. was, specifically "due to the financial burden of defending this case." The A.s do not challenge those findings, all of which are amply supported by the record.

The court then concluded that Ms. Karen S. had substantial justification for litigating this case and that the A.s did not. We addressed that determination above and need not revisit it here.

Under the particular circumstances of this case, we find no error in the circuit court's failure to apportion Ms. Karen S.'s fees and costs. As noted, § 12-103 does not require it. Unlike fee shifting provisions that depend on which party prevails in a case or on a claim, the trial judge's charge under § 12-103 is to make an award that is "just and proper." *See*

_____

[10] Ms. Karen S.'s counsel submitted (1) an affidavit of fees, in which she attested that her services were "reasonable and necessary" to the litigation, and (2) an itemized client ledger that included dated entries of services and fees charged to Ms. Karen S. These materials were adequate to permit the court to assess the reasonableness of the work performed and the amounts billed. *See Bd. of Trustees, Cmty. College of Balt. County v. Patient First Corp.*, 444 Md. 452, 485-86 (2015) (stating that a ledger is sufficient if it lists the work performed and is "as detailed as reasonably possible, so that the client . . . will know with some precision what services have been performed") (quoting *Diamond Point Plaza Ltd. P'ship v. Wells Fargo Bank, N.A.*, 400 Md. 718, 760 (2007)); *Fitzzaland v. Zahn*, 218 Md. App. 312, 334 (2014) (affirming award of fees and costs where there was "sufficient information in the record from which the court could determine, directly and inferentially, the appropriate amount for an attorney's fee award").

28

*generally* Md. Rule 2-702(b); *McDermott v. Dougherty*, 385 Md. 320, 432 (2005) (observing that a trial court's discretion "must be based upon the statutory criteria and the facts of the case") (quoting *Jackson v. Jackson*, 272 Md. 107, 112 (1974)). It was not an abuse of discretion on this record for the circuit court to conclude that it was just and proper for the A.s to bear Ms. Karen S.'s attorney's fees and costs. Mother, who was not represented by counsel at any point in the litigation, appears to have been the least active party in the litigation. She did not initiate the litigation or drive a substantial amount of the activity in it, especially with respect to Ms. Karen S. Father initiated the litigation and was an active participant in it. However, given that the A.s were mostly aligned with Father's position and the testimony that they provided him with substantial financial support, it would not be unreasonable to consider those parties together. For reasons already discussed, we also find strong support for the court's decision in all three of the factors the statute directs the trial court to consider: the resources, needs, and justification for the positions taken by the parties.

B.      **The Court Did Not Err by Not Giving the A.s a Credit Against the Attorney's Fees Award Based on Their Previous Support of Child.**

Finally, the A.s argue that the court erred when it failed to "tak[e] into account in assessing counsel fees the substantial sums" they paid to support Child for the four years of his life prior to this case. This argument misapprehends the role and purpose of an award of attorney's fees and costs under § 12-103. Such an award is made to compensate a party for fees and costs paid for legal representation. *See generally Goldberg v. Miller*, 371 Md. 591, 606 (2002) ("The party, . . . rather than the child, receives the immediate benefit from

29

an award under [§ 12-103(a)]. . . . Thus, courts may not treat an award under Section 12-103(a) as child support."). Such awards do not contemplate offsets for childcare or other past expenses paid for the child, however noble or selfless they might have been. The court properly exercised its discretion by weighing the § 12-103(b) factors, including by examining the current "financial ability" of the A.s to pay. *Henriquez*, 413 Md. at 301 (the court's "balancing under Section 12-103" properly involved analysis of the husband's "financial ability" where the other party was "virtually penniless"). Although it is appropriate to consider the implications of an award of attorney's fees and costs for a child's future best interests, *see Petrini*, 336 Md. at 468, amounts paid in the past are not relevant.

The crux of the A.s' complaint on appeal is an assertion of some measure of unfairness that they are being held to the same standards as parents based on their intervention in this custody battle. We perceive no unfairness. "Intervention in an ongoing controversy, whether by right or by leave of court, is a two-way street." *In re Guardianship No. 89-CA-9865*, 88 Md. App. 191, 196 (1991). By intervening, a party "renders itself vulnerable to complete adjudication by the court of issues in litigation between the intervenor and the adverse party. It is said to assume the risk that its position will not prevail and that an order adverse to its interests may be entered." *Id.* There is no injustice in holding the A.s to the same standards, and the same consequences, as other parties upon their intervention in this proceeding.

30

In sum, we conclude:

- A *de facto* parent is eligible for an award of attorney's fees and costs in a custody, visitation, or child support proceeding under § 12-103(a) on the same basis as a biological or adoptive parent;

- An intervening non-parent is subject to an award of attorney's fees and costs in a custody, visitation, or child support proceeding under § 12-103(a);

- Under § 12-103(c), a court must assess attorney's fees and costs against a party to a custody, visitation, or child support proceeding who lacked substantial justification for prosecuting or defending the proceeding, without regard to whether the party is or is not a parent; and

- Under the circumstances of this case, the circuit court did not err or abuse its discretion in ordering the A.s to pay the attorney's fees and costs incurred by Ms. Karen S.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY APPELLANTS.**

31