39 A.3d 96

Joanna DAVIS

v.

Michael A. PETITO, Jr.

No. 30, Sept. Term, 2011.

Court of Appeals of Maryland.

Feb. 27, 2012.

John R. Seward (Donald P. Salzman, Washington, DC), on brief, for petitioner.

Laura E. Hay (Cockey, Brennan & Maloney, P.C., Salisbury, MD), on brief, for respondent.

K. Lee Blalack II, Robert N. Eccles, Theresa S. Gee, O'Melveny & Myers LLP, Washington, DC, for Amici Curiae brief of Justice for Children and Domestic Violence Legal Empowerment and Appeals Project.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA and JOHN C. ELDRIDGE (Retired, Specially Assigned), JJ.

BATTAGLIA, J.

We have been asked to consider whether the gratuitous cost of pro bono legal services,[1] provided to a party in a custody modification proceeding, may be considered in awarding attorneys' fees, pursuant to Section 12–103 of the Family Law Article, Maryland Code (1984, 2006 Repl.Vol.),[2] to the other party, who had retained private counsel. Joanna Davis, Petitioner, was ordered by the Circuit Court for Wicomico County to pay her ex-husband Michael A. Petito, Jr., Respondent, $30,773.54 in attorneys' fees and costs, because the trial court

---

1. Pro bono is a shortened version of the latin term "pro bono publico," which means "[f]or the public good." Black's Law Dictionary 1323 (9th ed.2009). In Maryland, the provision of pro bono legal services, without fee or at a substantially reduced fee, is considered a professional responsibility of a lawyer. *See* Maryland Rule of Professional Conduct 6.1(a), cmt. 1.

2. Section 12–103 of the Family Law Article provides:
 (a) *In general.*—The court may award to either party the costs and counsel fees that are just and proper under all the circumstances in any case in which a person:
 (1) applies for a decree or modification of a decree concerning the custody, support, or visitation of a child of the parties; or
 (2) files any form of proceeding:
 (i) to recover arrearages of child support;
 (ii) to enforce a decree of child support; or
 (iii) to enforce a decree of custody or visitation.
 (b) *Required considerations.*—Before a court may award costs and counsel fees under this section, the court shall consider:
 (1) the financial status of each party;
 (2) the needs of each party; and
 (3) whether there was substantial justification for bringing, maintaining, or defending the proceeding.
 (c) *Absence of substantial justification.*—Upon a finding by the court that there was an absence of substantial justification of a party for prosecuting or defending the proceeding, and absent a finding by the court of good cause to the contrary, the court shall award to the other party costs and counsel fees.
 Statutory references to Section 12–103 of the Family Law Article ("Section 12–103") throughout are to the Maryland Code (1984, 2006 Repl.Vol.).

determined that she was in a better financial position than Mr. Petito, due to her having received pro bono representation by the Sexual Assault Legal Institute (SALI),[3] whereas Mr. Petito had accumulated over $70,000 in legal fees as a result of retaining private counsel.

The Court of Special Appeals affirmed the trial court's order in a reported opinion, *Davis v. Petito*, 197 Md.App. 487, 14 A.3d 692 (2011), even though Ms. Davis had argued that the trial court's order discounting any perceived value associated with her representation contravened this Court's decision in *Henriquez v. Henriquez*, 413 Md. 287, 992 A.2d 446 (2010), in which we interpreted Section 12–103 to permit an attorneys' fee award to a prevailing party, who also had received pro bono legal representation.[4] We granted certiorari, 420 Md. 81, 21 A.3d 1063 (2011), to consider the following question:

> In determining an award of costs and attorney's fees in a custody case, Family Law Article § 12–103(b)(2) of the Maryland Code requires the courts to consider, *inter alia*, the financial status and needs of each party. In assessing the parties' financial status and needs, and ultimately ordering the Mother to pay $30,773.54 of the Father's legal expenses, was it appropriate for the lower court to consider the fact that the Mother was represented *pro bono* and to disregard her day-to-day financial needs, particularly as they relate to caring for the Child?

---

**3.** SALI, a program of the Maryland Coalition Against Sexual Assault (MCASA), "provides direct legal services for victims and survivors of sexual assault." Legal Services—SALI, MCASA, http://www.mcasa.org/law-public-policy/legal-services-sali/ (last visited Feb. 23, 2012).

**4.** In *Henriquez v. Henriquez*, 413 Md. 287, 992 A.2d 446, we affirmed the award of attorneys' fees on behalf of the prevailing party who was represented by a nonprofit legal organization, concluding that pro bono legal services carry a quantitative value that must be considered in determining the amount of an attorneys' fees award under Section 12–103. *See also Weichert Co. of Maryland, Inc. v. Faust*, 419 Md. 306, 329 n. 7, 19 A.3d 393, 407 n. 7 (2011) (applying the rationale in *Henriquez*, that "the party still 'incurred' fees, despite her not being charged," to affirm the award of attorneys' fees to an employee pursuant to a fee-shifting clause in her employment contract, even though her legal representation was financed by a third party).

We shall hold that the consideration that one party was represented on a pro bono basis, in order to award attorneys' fees to the other party who had retained counsel was erroneous under Section 12–103, and we shall order a remand to the trial court for reconsideration of the statutory factors in light of this opinion.

**Background**

Joanna Davis and Michael Petito were married on December 12, 1998 and have one daughter, Sophia, born on October 22, 2003. In April of 2006, the Circuit Court for Wicomico County granted them an absolute divorce and awarded them joint legal custody but primary physical custody of the child to Ms. Davis.

In December of 2008, Ms. Davis, through retained counsel, filed an Emergency Complaint for Immediate Custody, Injunctive Ex Parte and Pendente Lite Relief, in which she sought sole legal and physical custody of Sophia, because she alleged that Mr. Petito had sexually abused the child. Mr. Petito denied the allegations, initially without counsel and later, after having retained private counsel, filed a Counter Complaint for Modification of Custody, seeking joint physical and legal custody of Sophia and a decrease in his child support payments; he also specifically requested attorneys' fees. Eventually, Ms. Davis could not afford to pay an attorney and secured the services of SALI on a pro bono basis.

A hearing ensued but, after the first five days, the Circuit Court Judge determined that Ms. Davis had not established by preponderance of the evidence that there was "any form of sexual abuse" by Mr. Petito; specifically, she found that "none of [Ms. Davis's] experts are able to offer consistent credible opinions as to what exactly happened," while she found "convincing and credible" the testimony of Mr. Petito's expert, who was offered "for the general proposition that the minor child's statements in this case are insufficient to support a finding of sexual abuse." The parties then presented both oral and written comments regarding the award of attorneys' fees under Section 12–103.

As to attorneys' fees and costs, Mr. Petito submitted a request for $76,052, arguing that the judge should award him the total amount under Section 12–103, because Ms. Davis lacked substantial justification to seek a modification in child custody. He also asserted that Ms. Davis had "financial circumstances [that] far exceed[ed] Mr. Petito's financial circumstances" because she owned her own home and had pro bono representation, while he did not own property and had had retained private counsel; according to him, the Sexual Assault Legal Institute's representation of Ms. Davis meant that "her attorneys' fees have been paid in full whereas Mr. Petito has incurred debts in the sum of $61,340 . . . borrowed from his 401 K and incurred significant unsecured liabilities . . . ."

Ms. Davis conversely submitted a request for an award of attorneys' fees and costs in the amount of $14,080.12, representing the amount she paid to her private attorney before she retained SALI. She urged that Mr. Petito was in a better financial position to pay for attorneys' fees because his family had given him interest-free loans, whereas Ms. Davis had "no ability to pay [his] counsel fees," having "less than $2,000.00 in cash." She maintained that she had substantial justification to bring her claim based on the allegations of sexual abuse.

The judge awarded Mr. Petito $30,773.54 in attorneys' fees,[5] reasoning that Mr. Petito had substantial justification for

---

**5.** In the Memorandum Opinion, the trial judge explained her calculation as follows:

Mr. Petito requested $34,983 in attorneys' fees from Ms. Davis. This request was based on total fees, including expert witness fees, of $76,052. Multiplying Ms. Davis's income percentage of 46%, as stated in the child support guidelines, to the $76,052 yields $34,983 ($76,052 * .46). However, Ms. Davis incurred $9,153 in fees to Lenora Mihavetz, Esq., who was her attorney prior to retaining the Sexual Assault Legal Institute. We find it equitable to offset the $9,153 already paid by Ms. Davis from the balance due to Mr. Brennan, which leaves $66,899 to be divided among the parties ($76,052–$9,153). Applying Ms. Davis' income percentage to that total yields $30,773.54 ($76,052 * .46).

Ms. Davis's "income percentage" was calculated by adding together the parties' monthly incomes, $3,814 earned by Ms. Davis and $4,500

defending himself in this proceeding and that Ms. Davis's financial circumstances were better than that of Mr. Petito because she had been represented on a pro bono basis, whereas Mr. Petito had incurred significant debt as a result of retaining private counsel:

The Court may order attorneys fees under Family Law Article § 12–103, *Annotated Code of Maryland*, but not before considering the financial status of each party, the needs of each party, and whether there was substantial justification for bringing or defending the proceeding. *Lieberman v. Lieberman*, 81 Md.App. 575, 601 [568 A.2d 1157] (1990). The Court acknowledges that each party has expended significant financial resources as a result of this case. Mr. Petito, however, has suffered disproportionate financial hardship from these proceedings. His counsel was privately retained, unlike Ms. Davis's representation, which has been without charge since October 2009. He has exhausted his savings, credit, and taken loans in excess of $10,000 from his family. There can be no doubt that the needs of both parties are high, especially in light of the resources expended in these proceedings. The Court finds that Mr. Petito had a substantial justification in defending himself in these proceedings, initiated by Ms. Davis. While the Court recognizes the struggle that any parent must have when believing their child has been sexually abused, particularly when the suspected abuser is the other parent, the Court ultimately was unable to make a finding that the evidence supported that sexual abuse occurred. Without defending himself, Mr. Petito risked losing his parental relationship with Sophia. By contrast, Ms. Davis was represented pro bono by SALI, and should bear shared responsibility for the legal fees according to her income in light of the full record herein.

Ms. Davis thereafter filed a Motion to Alter or Amend the Order, arguing that the judge's consideration of the pro bono

---

earned by Mr. Petito, which totaled $8,314, and identifying the percentage of that joint income earned by Ms. Davis, 46 percent.

status of Ms. Davis's representation in awarding Mr. Petito attorneys' fees and costs under Section 12–103 was erroneous in light of our holding in *Henriquez*, 413 Md. 287, 992 A.2d 446, which had been filed within days before the judge's ruling. Ms. Davis argued that "it is without significance that Ms. Davis is currently under retainer with a legal services organization," and the Circuit Court should have instead focused on Ms. Davis's financial circumstances and needs, namely her inability to afford to pay Mr. Petito's fees; the judge denied Ms. Davis's Motion.

Ms. Davis timely appealed to the Court of Special Appeals,[6] which affirmed the trial court's order in a reported opinion,

---

**6.** Ms. Davis presented the following three questions to the Court of Special Appeals, only one of which pertains to the issue before us:

1. To disqualify an opponent's expert witness for a conflict of interest, the party seeking disqualification must show that it had a confidential relationship with the expert and that it disclosed confidential information to the expert. The Father showed only that he and his attorney had a single conversation with the Mother's proposed expert where he discussed the facts of the case and inquired about the expert's availability. Did the trial court err in disqualifying the Mother's expert?

2. Maryland Rule 5–803(b)(4) provides a hearsay exception for statements made for the purposes of medical diagnosis and treatment. This Court has held that statements made by children under the age of five qualify for this exception. Did the trial court err in holding that Rule 5–803(b)(4) did not apply to statements made by the Child to her therapist based primarily on the fact that the Child was five at the time the statements were made?

3. In determining an award of costs and attorney's fees in a custody case, Family Law Article § 12–103(b) requires the courts to consider (1) the financial status of each party; (2) the needs of each party; and (3) whether there was a substantial justification for bringing or defending the proceeding.

 a. The Mother's needs include maintaining the Child's primary residence, for which she is obligated to make mortgage payments. The Father lives rent-free and incurs only ordinary living expenses. Did the trial court err in not considering these relative needs when ordering the Mother to pay $30,773.54 of the Father's legal fees?

 b. Did the trial court err in considering the case's outcome, instead of the Mother's justification for bringing the case, in ordering the Mother to pay $30,773.54 of the Father's legal fees?

 c. *Did the trial court err in considering the fact that the Mother was represented by a legal services organization in ordering her to pay $30,773.54 of the Father's legal fees?*

197 Md.App. 487, 14 A.3d 692 (2011), concluding that the Circuit Court Judge properly considered the impact of the disparity in the cost of the parties' attorneys' fees on each party's financial status, needs and substantial justification for bringing or defending the proceeding. The Circuit Court's consideration that Ms. Davis was represented pro bono was limited to "account[ing] for the amount of fees she had paid or was obligated to pay being substantially lower than what Petito would pay." 197 Md.App. at 533, 14 A.3d at 718. The intermediate appellate court rejected Ms. Davis's challenge that the Circuit Court Judge did not consider the relative needs of the parties, because the Circuit Court Judge considered the parties' monthly incomes and amounts of attorneys' fees incurred and determined that Mr. Petito's justification in defending himself in the proceeding was more substantial than Ms. Davis's justification in bringing it, and therefore justified his incurrence of more attorneys' fees than Ms. Davis as well as the court's decision that she share in the payment of the fees. *Id.* at 533, 14 A.3d at 719.

**Discussion**

■ The award of attorneys' fees and costs in child support proceedings is controlled by Section 12–103 of the Family Law Article, which provides:

(a) *In general.*—The court may award to either party the costs and counsel fees that are just and proper under all the circumstances in any case in which a person:

(1) applies for a decree or modification of a decree concerning the custody, support, or visitation of a child of the parties; or

(2) files any form of proceeding:

(i) to recover arrearages of child support;

(ii) to enforce a decree of child support; or

(iii) to enforce a decree of custody or visitation.

(italics added).

(b) *Required considerations.*—Before a court may award costs and counsel fees under this section, the court shall consider:

(1) the financial status of each party;

(2) the needs of each party; and

(3) whether there was substantial justification for bringing, maintaining, or defending the proceeding.

(c) *Absence of substantial justification.*—Upon a finding by the court that there was an absence of substantial justification of a party for prosecuting or defending the proceeding, and absent a finding by the court of good cause to the contrary, the court shall award to the other party costs and counsel fees.

Section 12–103 is an exception to the "American rule," the general rule in Maryland that requires litigants to be responsible for their own legal fees, *Thomas v. Gladstone*, 386 Md. 693, 699, 874 A.2d 434, 437 (2005) ("Under the common law 'American Rule' applied in Maryland, the prevailing party in a lawsuit may not recover the attorneys' fees as an element of damages or costs unless . . . there is a statute that allows the imposition of such"). Before making an award of attorneys' fees, Section 12–103 requires the trial court to consider the parties' financial status, needs and whether there was a substantial justification for bringing, maintaining or defending a proceeding. *Petrini v. Petrini*, 336 Md. 453, 468, 648 A.2d 1016, 1022 (1994). The present disagreement centers on the impact of one party having pro bono representation rather than privately-retained counsel.

Ms. Davis contends that the judge erred by considering the fact that SALI's legal services were of no cost to her as enhancing her ability to contribute to Mr. Petito's attorneys' fees. Ms. Davis argues that Mr. Petito's attorneys' fees award contradicts our decision in *Henriquez*, in which we recognized that legal representation on a pro bono basis should be considered indicative of meager financial status and needs that prevent an individual from affording an attorney. She asserts that ordering her to pay the attorneys' fees of a

party who was capable of affording private counsel frustrates the purpose of pro bono legal service, which is to "facilitate access to the judicial system by alleviating the financial burden of paying for an attorney." Finally, Ms. Davis contends that the trial court erroneously failed to consider her needs, particularly relating to caring for Sophia, and limited finances in ordering the attorneys' fees award to Mr. Petito.

Mr. Petito, in support of the Court of Special Appeals's opinion and the trial court's order, argues that *Henriquez* does not apply to this case and that the trial court's consideration of SALI's pro bono services was to point out the disproportionate financial statuses of the parties. Specifically, Mr. Petito argues that the trial court correctly concluded that he had "exhausted his savings and credit, and was forced to take loans from family members in order to pay his legal expenses" whereas Ms. Davis "continues to have legal services provided free of charge." Finally, he maintains that a reversal in favor of Ms. Davis would introduce a new rule of law that "would allow individuals to use *pro bono* services as a shield to protect against awards of attorneys' fees . . . ."

In considering an award under Section 12–103, the "absence of substantial justification of a party for prosecuting or defending the proceeding," would, without good cause, result in an award of attorneys' fees and costs to the other party, so long as those fees and costs are reasonable.[7] Under Section 12–103(b), however, substantial justification is but one consideration in the triad, the others being financial status and needs, to support fee shifting.

The award of attorneys' fees in this case lumped the perceived values of the respective attorneys' fees together and

---

7. In a fee-shifting context, reasonableness of attorneys' fees is always a consideration, "taking into account such factors as labor, skill, time, and benefit afforded to the client. . . ." *Petrini v. Petrini*, 336 Md. 453, 467, 648 A.2d 1016, 1022 (1994); *see also Monmouth Meadows Homeowners Ass'n v. Hamilton*, 416 Md. 325, 333, 7 A.3d 1, 5 (2010) ("[T]rial courts must routinely undertake an inquiry into the reasonableness of any proposed fee before settling on an award."); *Myers v. Kayhoe*, 391 Md. 188, 892 A.2d 520 (2006).

then applied a formula to assess Mr. Petito's fees. The judge conflated Mr. Petito's substantial justification for defending the custody proceeding with Ms. Davis's use of pro bono legal services in bringing the claim, reasoning that "Mr. Petito risked losing his parental relationship with Sophia," and "[b]y contrast, Ms. Davis was represented pro bono by SALI, and should bear shared responsibility for the legal fees according to her income. . . ." Substantial justification for each party's position, however, is measured by the issues presented and the merits of the case, not the amount of attorneys' fees charged.

In 1993, the Legislature repealed and reenacted Section 12–103 in order to introduce the mandatory award of attorneys' fees and costs under subsection (c). 1993 Session Laws, Chapter 514. Testimony provided in the file for House Bill 381, which contained the current language of subsection (c), reflects that its purpose was to address the inability of custodial parents to finance judicial enforcement of court-ordered child support. *See* Memorandum of Delegate Ellen R. Sauerbrey, Additional Testimony on HB 381, Alimony and Child Support—Mandatory Award of Expenses (Feb. 16, 1993), quoting Testimony of Jill Coleman ("But without child support coming in, who has the money to pay a lawyer to collect child support? This means that non-payment of child support is actually a powerful way of evading the obligation to pay child support.").

In support of House Bill 381, Judge Rosalyn B. Bell of the Court of Special Appeals, as a member of the Governor's Task Force on Family Law, provided written testimony that custodial parents, who were entitled to receive court-ordered child support payments, often did not because the non-custodial parent refused to pay, knowing that the custodial parent could not afford to hire an attorney and enforce the order. While judges already had discretion to award attorneys' fees, many did not choose to exact this toll:

> The Task Force often heard the same complaint from divorced persons, including single heads of households, that court-awarded alimony and child support cannot be collected

because the proceedings necessary to enforce such awards are simply too expensive. In many instances, the responsible party is aware of the expenses involved in enforcement and ignores the court's directive to pay alimony or child support.

At the present time, the law allows the court to award such expenses, but the reality is that this is rarely done, because enforcement never appears to be a "problem." By requiring the court to award costs and counsel fees, the Bill facilitates collection of alimony and child support. This helps a large segment of our children and their custodians. This Bill also assists those persons who, after years of being out of the workplace, are unable to earn sufficient salaries to provide for themselves, let along enforce an alimony award to which they are entitled.

Letter from the Honorable Rosalyn B. Bell, to Delegate Joseph F. Vallario, Jr., Chairman of the House Judiciary Committee (Feb. 8, 1993).

Cases interpreting Section 12–103(b) generally also relate substantial justification to the merits of the case. In *Lieberman v. Lieberman*, 81 Md.App. 575, 600, 568 A.2d 1157, 1169 (1990), Judge Rosalyn B. Bell, in reviewing the award of attorneys' fees to Ms. Lieberman, considered whether Ms. Lieberman had substantial justification to bring the action and concluded that "the trial judge did find for Ms. Lieberman which carries with it an implicit finding of very substantial justification." *Id.* at 600, 568 A.2d at 1169.

Prevailing on the merits is a sufficient, but not a necessary, element of substantial justification in bringing, maintaining or defending a proceeding. Substantial justification under Section 12–103(b) may require a consideration of the merits of each party's position, including the non-prevailing party. In *Broseus v. Broseus*, 82 Md.App. 183, 570 A.2d 874 (1990), yet another custody battle between spouses, the trial court granted child custody to Dr. Broseus. Dr. Broseus and Ms. Broseus incurred attorneys' fees in the amount of $71,823 and $48,905.17, respectively, and the trial court, observing that the

language of Section 12–103 permitted an award of attorneys' fees to either party, awarded Ms. Broseus $5,000 in attorneys' fees. Dr. Broseus appealed and the Court of Special Appeals affirmed, reasoning that "[j]ust because appellant [Dr. Broseus] prevailed on the custody issue does not preclude an award to appellee [Ms. Broseus], so long as there was substantial justification for bringing or defending the proceeding under ... § 12–103." *Id.* at 200, 570 A.2d at 882.

Essentially, substantial justification, under both subsections (b) and (c) of Section 12–103, relates solely to the merits of the case against which the judge must assess whether each party's position was reasonable.[8] A judge, after finding substantial justification, then must proceed to review the reasonableness of the attorneys' fees, and the financial status and needs of each party before ordering an award under Section 12–103(b).

In this case, the value of Mr. Petito's attorneys' fees also controlled the judge's perception of the financial status and needs of both parties. In factoring the needs of Mr. Petito, the Circuit Court Judge considered both the amount paid to his private counsel, $76,052, as well as the debt he incurred to pay for those fees, including loans from his family. In so doing, the judge considered the attorneys' fees for Mr. Petito twice. Ms. Davis's SALI representation was valued at zero and Ms. Davis's needs, such as her lack of savings or disposable income, however, were not considered in the award of attorneys' fees. The judge divided the amounts paid by the

---

8. This definition of "substantial justification" is derived from federal jurisprudence addressing the same standard in fee-shifting cases. Under the Equal Access to Justice Act, Section 2412(d)(1)(A), Title 28 of the United States Code (2006), "a prevailing party other than the United States" shall be awarded fees and other expenses "incurred by that party in any civil action ... brought by or against the United States ..., unless the court finds that the position of the United States was *substantially justified* or that special circumstances make an award unjust." (italics added). To be substantially justified, the Supreme Court of the United States interpreted, the United States must be " 'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person,' " or, in other words, have "the 'reasonable basis both in law and fact.' " *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490, 504–05 (1988).

parties to their respective private counsel according to their relative income. No comparison, beyond their incomes, apparently was undertaken by the judge to determine the financial status and needs of each of these parties.

■ What we derive from the statute is that financial status and needs of each of the parties must be balanced in order to determine ability to pay the award to the other; a comparison of incomes is not enough.[9] *Henriquez*, 413 Md. at 301, 992 A.2d at 455 (upholding the Circuit Court's award of attorneys' fees to Mrs. Henriquez because the court "engaged in balancing under Section 12–103, finding that Mrs. Henriquez was 'wholly dependent' and 'virtually penniless,' warranting an award of attorneys' fees, given Mr. Henriquez's financial ability"); *Jackson v. Jackson*, 272 Md. 107, 112, 321 A.2d 162, 165–66 (1974) (concluding that the financial status of Mr. Jackson, who was ordered to pay an award of attorneys' fees to his ex-wife, "certainly permitted the award"); *Lemley v. Lemley*, 109 Md.App. 620, 633–34, 675 A.2d 596, 602 (1996) (vacating an award of attorneys' fees where the non-prevailing party represented himself pro se and earned half of the income earned by the prevailing party, concluding that "[i]t is unreasonable to require Mr. Lemley to pay for the benefit of professional counsel for the opposing party, while being unable to afford that benefit for himself"); *Sczudlo v. Berry*, 129 Md.App. 529, 552–53, 743 A.2d 268, 280–81 (1999) (remanding to the trial court for further consideration because a disparity

---

**9.** Other statutory schemes embodying the term "financial status" provide some guidance as to what more may have been contemplated other than mere income. For example, the financial status of an applicant under the Maryland Economic Adjustment Fund, which is used in part to "make loans to new or existing companies in communities that suffer dislocation due to defense adjustments," Maryland Code (2008), Section 5–203(e)(1)(i) of the Economic Development Article, is determined by a current balance sheet, a profit and loss statement, and credit references. Section 5–205(b)(8) of the Economic Development Article, Maryland Code (2008). A candidate for public office seeking a waiver of the mandated filing fee under Section 5–401(c) of the Election Article, Maryland Code (2002, 2010 Repl.Vol.) may demonstrate an inability to pay the fee by submitting his or her net disposable income and liquidity of assets.

in the parties' income, without more, was insufficient to support an attorneys' fees award under Section 12–103(b)). The term "needs" could include that which has not been paid to attorneys, pursuant to retainer agreements. *Lieberman,* 81 Md.App. at 600, 568 A.2d at 1170 (observing that a party's needs could be impacted by fees to an attorney that remain outstanding).

 Section 12–103 contemplates a systematic review of economic indicators in the assessment of the financial status and needs of the parties, as well as a determination of entitlement to attorneys' fees based upon a review of the substantial justification of each of the parties' positions in the litigation, mitigated by a review of reasonableness of the attorneys' fees. The only time that the relative amounts of the parties' attorneys' fees should be considered is when both are determined to have a substantial justification for their positions; after which, it is clear from *Henriquez,* 413 Md. at 287, 992 A.2d at 446, pro bono legal services must be valued.

We remand this case to the Circuit Court for a reconsideration of the attorneys' fees award under Section 12–103. If the Circuit Court determines that Ms. Davis lacked substantial justification for bringing her child custody modification claim and absent a finding of good cause to the contrary, then under Section 12–103(c), the reasonableness of Mr. Petito's attorneys' fees would then be the only consideration. If the Circuit Court finds under Section 12–103(b), however, that Ms. Davis and Mr. Petito each had substantial justification for bringing or defending their respective positions in the proceeding, then the Circuit Court must value the legal services afforded to both parties, according to *Henriquez,* and determine their reasonableness, after which the Circuit Court must proceed to assess Ms. Davis's and Mr. Petito's financial status and needs.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR WICOMICO COUNTY AND REMAND THE CASE TO THE**

CIRCUIT COURT FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS TO BE DIVIDED EQUALLY BY THE PARTIES.