*Bindu George v. Jerry Bimbra*, No. 1444, Sept. Term, 2024. Opinion filed on May 6, 2025, by Wells, C.J.

**FAMILY LAW – ATTORNEYS' FEES – GOOD CAUSE**

When a statute does not define "good cause," appellate courts consider the purpose of the statute and relevant case law in order to provide a definition of good cause under the statute. Such definition of good cause is flexible and its application varies with the facts and circumstances of individual cases.

Maryland Code Annotated, Family Law Article ("FL") § 12-103(c) does not define good cause in the context of awarding attorneys' fees in certain family law proceedings. This Court reviewed FL § 12-103(c)'s purpose, relevant case law, and other family law fee shifting provisions that our Supreme Court ruled must be construed in harmony with FL § 12-103. Upon such a review, we defined good cause under FL § 12-103(c) to mean a substantial reason to not award a party all of their reasonable attorneys' fees if the court finds the other party did not have substantial justification for prosecuting or defending the proceeding.

**FAMILY LAW – ATTORNEYS' FEES – GOOD CAUSE**

After an appellate court defines good cause under a statute that does not provide a definition, the appellate court then reviews whether the lower court's reasoning for finding good cause can constitute good cause under the statute. Such review is made under an abuse of discretion standard.

Here, the court abused its discretion in finding "the parties' relative financial status and the fees and expenses incurred by both sides" constituted good cause under FL § 12-103(c) to not award the appellant all of the attorneys' fees she requested. Such a finding by the court is inconsistent with the purpose of FL § 12-103(c) to limit judges' discretion in awarding attorneys' fees when a party lacks substantial justification in prosecuting or defending a claim, as well as contrasts with relevant case law.

Circuit Court for Montgomery County
Case No. 166558FL

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 1444

September Term, 2024

_____

BINDU GEORGE

v.

JERRY BIMBRA

_____

Wells, C.J.,
Ripken,
Eyler, Deborah S.
   (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Wells, C.J.

_____

Filed: May 6, 2025

\*Tang, Rosalyn, J., did not participate in the Court's decision to designate this opinion for publication pursuant to Md. Rule 8-605.

Pursuant to the Maryland Uniform Electronic Legal Materials Act (§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Gregory Hilton, Clerk

This case arises from a custody dispute between appellant Bindu George ("Mother") and appellee Jerry Bimbra ("Father") regarding their minor child, X.[1] Mother and Father originally shared legal and physical custody of X, but in December 2021, Mother filed a Motion to Modify Legal Custody. After a trial in the Circuit Court for Montgomery County in 2024, the court granted primary physical and sole legal custody of X to Mother. The court also found Father lacked substantial justification for his legal position before the court from December 2021 to the date of trial. Mother sought $622,095.12 in attorneys' fees, $31,108.60 of which Mother incurred from the trial alone. Pursuant to Maryland Code Annotated, Family Law Article ("FL") § 12-103(c), the court found good cause to not order Father to pay the entirety of Mother's attorneys' fees. Accordingly, the court ordered Father to pay Mother $295,493.26—half of the attorneys' fees Mother incurred prior to trial. Mother then filed a Motion to Revise, seeking, in relevant part, an increase in her attorneys' fees award to $590,986.22—the attorneys' fees Mother incurred prior to trial. The court denied Mother's motion.

Mother filed this timely appeal. She submits two questions for our review, which we consolidate into one:[2]

---

[1] To preserve the anonymity of the minor child, we refer to her by the randomly selected letter X.

[2] Mother's verbatim questions are:

1. Did the court err by interpreting the mandatory fee-shifting provision of the statute governing fee-shifting in custody cases (Md. Code Ann., Fam. Law §12-103(c)) to permit a balancing of the parties' financial circumstances as the sole basis for finding "good cause" not to award

Did the court abuse its discretion in finding "the parties' relative financial status and the fees and expenses incurred by both sides" constituted good cause under FL § 12-103(c) to not award Mother all of her attorneys' fees?

For the following reasons, we vacate the award of attorneys' fees to Mother and remand to the circuit court for reconsideration of those fees consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

Mother and Father are the parents of 14-year-old X but were never married. Since 2019, they have fought extensively in court over custody of X. Pursuant to a Partial Parenting Agreement from March 2021, Mother and Father shared legal and physical custody of X. The Circuit Court for Montgomery County denied both parents' requests for tie-breaking authority.

In December 2021, Mother filed a Motion to Modify Legal Custody, seeking tie-breaking authority. In March 2022, Father filed a Counter-Petition for Modification of Legal Custody, seeking sole legal custody of X. The next day, Mother amended her Motion to add a claim for sole legal custody.

In June 2022, Father sent X a text saying he would not "be seeing [X] anymore," which created a "severe reaction in [X], making her feel dejected and not loved." Shortly

Mother a portion of her attorneys' fees, when doing so eliminates any meaningful distinction between the permissive and mandatory provisions of the statute?

2. Did the court abuse its discretion when finding that "the parties' relative financial status and the fees and expenses incurred by both sides" constituted good cause not to apply mandatory fee shifting with respect to $295,493 of Mother's attorneys' fees, when Father had $4,200,000-$8,500,000 in liquid assets and Mother had $9,000?

after this incident, Father stepped back from the shared physical custody schedule under the Partial Parenting Agreement. Around this time, Father and X also began participating in family therapy.

In October 2022, Father filed an Emergency Motion to Enforce Partial Parenting Agreement, claiming Mother prevented Father from contacting X. Father filed this Motion notwithstanding opposition from X's Best Interest Attorney ("BIA"), who believed a return to a shared physical custody schedule would not be in X's best interest. A few days later, Mother and Father executed a *Pendente Lite* Consent Order, granting Father access to X every other Sunday for four hours. The Order also acknowledged that Father and the BIA intended the Sunday visits and continued family therapy to "ultimately facilitate the resumption of the 50/50 parenting schedule should that be in the best interest of" X.

Family therapy, however, ended in December 2022—two months after execution of the *Pendente Lite* Consent Order. This was due to Father yelling and cursing at the family therapist, as well as Father emailing then-Congressman David Trone, claiming in part that the therapist and BIA were "working in tandem to misrepresent the facts of the case[.]"[3]

Shortly after family therapy ended, Father amended his Counter-Petition for Modification of Legal Custody to add a claim for primary physical custody of X "or at least under a shared 50/50 agreement." Mother also amended her Motion to Modify Legal Custody again, requesting primary physical custody of X in addition to her previous request for sole legal custody.

---

[3] In its July 8, 2024, Memorandum Opinion, the court found Father's email "to be full of childish anger and irrational conspiracy theories."

The matter was originally set for trial before the Circuit Court for Montgomery County in January 2023, but it was continued three times. The third continuance, granted on March 4, 2024, stemmed from Father's assertion that he contracted a "sudden and debilitating illness." The court ultimately treated Father's assertion as false and found Father responsible for Mother's fees "related to the continuance granted on March 4, 2024."

In May and June 2024, the court held a four-day trial on Mother's and Father's competing claims for sole legal and primary physical custody. Immediately prior to opening statements on the first day of trial, Father's counsel notified Mother and the court that Father was no longer contesting Mother's request for sole legal and primary physical custody of X.[4] Father, who moved to Las Vegas, Nevada around May 2023, instead sought an order for, in part, regular video/FaceTime contact with X and "some sort of access" to X when he visited Maryland.

After the trial, but before the court issued its decision, Mother filed a Petition and Affidavit in Support of Attorneys' Fees and Costs. Mother sought $622,095.12 in fees she incurred from February 2022 through June 2024.[5] Within that figure, Mother requested $60,625.28 for fees related to the March 2024 continuance and $31,108.60 for the trial.[6]

---

[4] Father was not present on the first day of trial. He did not appear until the fourth and final day of trial.

[5] Mother's request for fees did not include the nominal fees she incurred for filing her Motion to Modify Legal Custody in December 2021.

[6] The court specifically calculated the $31,108.60 figure as Mother's fees incurred for the trial.

Father testified at trial that his attorneys' fees from November 2021 to May 2024 totaled $445,585.51.

In its Memorandum Opinion and Order issued on July 8, 2024, the court granted Mother primary physical and sole legal custody of X. The court also granted Father FaceTime visitation with X once per week and in-person visitation at Mother's discretion.

The court outlined Mother's and Father's financial situations prior to its attorneys' fees analysis. Mother, a physician at the Food and Drug Administration, earns $273,802 annually. However, Mother testified she experienced financial hardship due to litigating with Father from December 2021 through trial in 2024. As the court described:

> [Mother] testified that this litigation has been devastating to her financially. She has "maxed out" on loans from her retirement. She has spent her savings. She has been unable to get a neuropsychological evaluation for [X] without waiting for insurance. She has held off buying her own glasses and has not bought clothes. She has not paid for lawn care, choosing instead to cut her own grass even though she has a bad ankle. She tries to use the dryer and air conditioner less to save money. She has maxed out on her Home Equity Line of Credit (HELOC).

The court also detailed Mother's testimony as to how she "took a hardship withdrawal" of nearly $100,000 from her Thrift Savings Plan account to pay her attorneys' fees. The court then recounted Father's testimony regarding his financial status:

> For employment, [Father] trades his own account. In 2023, he earned $220,693. In 2022, he earned $86,217. In 2021, he earned $1,267,686. This spike in income came from selling a long-term investment. (He paid capital gains tax on this profit.) In 2020, he earned less than zero. He attributed this to the pandemic.

(citations to exhibits omitted). During trial, the court entered into evidence a summary of Father's assets, including real property, bank accounts, and investment accounts, with a

5

total value of over $9 million.[7] The court also entered into evidence Father's financial statement from April 2024, listing his total net worth at approximately $5.5 million.

In its attorneys' fees discussion, the court explained it "considered the financial status and needs of each party" pursuant to FL § 12-103(b). The court also noted that, while it did not include Father's 2021 spike in income when calculating child support, it included the spike when analyzing Father's financial status for the purpose of awarding attorneys' fees. The court went on to express how "[t]he fees incurred in this case have wreaked havoc on both parties, particularly [Mother]. These are people of considerable means, and much of those means have gone [sic] to attorneys."

The court then found Mother had substantial justification for bringing her December 2021 Motion to Modify Legal Custody. The court additionally found Father's "position between December 14, 2021, and the date of trial (when he suddenly announced that he was no longer contesting physical or legal custody) was not substantially justified." Further, the court noted that by Father attacking various individuals involved in the case, such as the BIA and family therapist

> whenever they told [Father] something he didn't like, he made it incredibly expensive for all concerned. If [Father] could have calmly worked with these professionals, the parties might well have worked out their differences before litigation ever commenced (without spending approximately a million dollars on attorneys). But that ship has sailed. [Father] is primarily responsible for these expenses.

---

[7] Father disputes that the court considered this summary as Father's trial counsel did not stipulate to part of the exhibit detailing Father's finances. Upon review of the record, we determine Father's counsel did not object to the summary of Father's assets but rather a three-year average of Father's income based on his federal tax returns.

The court next determined that, out of the $622,095.12 Mother sought in attorneys' fees, it would not award the $31,108.60 Mother incurred for the trial. Of the $590,986.22 in fees Mother incurred prior to trial, the court explained:

> This Court seriously considered awarding fees and expenses in this entire amount [of $590,986.22] pursuant to FL Art., § 12-103(c). However, the Court finds good cause not to award the entire amount, given the parties' relative financial status and the fees and expenses incurred by both sides. Therefore, the Court will award fees in the amount of $295,493.26, representing one half of the fees [Mother] incurred prior to trial. . . . This figure includes the amounts attributable to the continuance of the March 4, 2024, trial date, so no separate award will be made.

The court described this as a "substantial award of fees."

Father filed a Motion to Alter or Amend the July 8, 2024, Custody Order, in part requesting the court to adjust the attorneys' fees awarded to Mother. Father "trade[s] his own account" for employment and needed to liquidate assets to pay the attorneys' fees owed to Mother. Because such liquidation resulted in capital gains taxes of at least 15%, Father requested the attorneys' fees award decrease to $251,169.28 to account for such taxes. Alternatively, Father requested he pay the $295,493.26 award in installments over two years. Mother filed a Motion to Revise the July 8, 2024, Custody Order, seeking, in part, an increase of her attorneys' fees award to $590,986.22. The court denied both Mother and Father's motions. Regarding Mother's motion, the court articulated its "belie[f] that the relative financial positions [of the parties] must be considered as 'good cause.'" The court also expressed that it was "satisfied that this substantial award of fees [of $295,493.26] is consistent with 12-103(c) and sound principles of equity."

7

Father filed a timely Notice of Appeal. Mother then filed this appeal, originally functioning as a cross appeal. Father, however, voluntarily withdrew his appeal, making Mother the appellant in this appeal. Since withdrawing his appeal, Father filed additional motions before the Circuit Court for Montgomery County. The parties had a hearing before the court in March 2025 and have additional hearings scheduled in May and August 2025.

## DISCUSSION

I. **The Court Abused Its Discretion in Finding "The Parties' Relative Financial Status and the Fees and Expenses Incurred by Both Sides" Constituted Good Cause to Not Award Mother All of Her Attorneys' Fees Under FL § 12-103(c).**

### A. Parties' Contentions

Mother contends the court abused its discretion in finding "the parties' relative financial status and the fees and expenses incurred by both sides" constituted good cause under FL § 12-103(c) to not award Mother all of her pre-trial attorneys' fees. Mother argues the court erred in its interpretation and application of FL § 12-103(c) because in finding good cause to not award all the attorneys' fees Mother requested, the court considered factors in FL § 12-103(b)—namely, "the parties' relative financial status and the fees and expenses incurred by both sides." Mother posits the court's interpretation of good cause results in no distinction between FL § 12-103(b) and (c), which is contrary to case law, the plain language of the statute, and legislative intent.

Mother further contends the court's finding of good cause does not align with the purpose of FL § 12-103(c) because it will not deter future groundless litigation by Father. While case law does not interpret good cause in the context of FL § 12-103(c) or other fee-

8

shifting statutes in the Family Law Article, Mother argues the court's interpretation of good cause contradicts this Court's and our Supreme Court's interpretation of good cause in other contexts. Finally, Mother argues the facts of the case, namely Father's financial status, do not support the court's finding of good cause based upon "the parties' relative financial status[.]"

In response, Father contends the "good cause" language in FL § 12-103(c) does not prevent the court from considering all circumstances in the case, including the parties' relative financial situations, in finding good cause. He also argues the court's finding of good cause in this case aligns with the phrase's meaning in other contexts and the overall purpose of FL § 12-103(c), which is to shift fees from a party that lacked substantial justification in their position to the other party who did have substantial justification. Father additionally posits the award of attorneys' fees to Mother, albeit not the entire amount she requested, aligns with the Legislature's twofold intent behind § 12-103(c): protecting parties from defending against frivolous litigation, and deterring potential litigants from pursuing such frivolous litigation. He finally stresses how the trial judge, who has discretion in finding good cause, is in the best position to determine whether good cause exists in a specific case.

### B. Standard of Review

"In a child custody proceeding, '[a]n award of attorney's fees will not be reversed unless a court's discretion was exercised arbitrarily or the judgment was clearly wrong.'" *David A. v. Karen S.*, 242 Md. App. 1, 23 (2019) (alteration in original) (quoting *Petrini v. Petrini*, 336 Md. 453, 468 (1994)). An abuse of discretion occurs "where no reasonable

9

person would take the view adopted by the trial court" or when the court "acts without reference to any guiding principles." *Alexander v. Alexander*, 252 Md. App. 1, 17 (2021) (cleaned up). "[A]n exercise of discretion based upon an error of law is an abuse of discretion." *Brockington v. Grimstead*, 176 Md. App. 327, 359 (2009).

### C. Analysis

FL § 12-103 addresses the award of costs and attorneys' fees for proceedings concerning "custody, support, or visitation of a child of the parties." FL § 12-103 reads in part:

> (a) The court may award to either party the costs and counsel fees that are just and proper under all the circumstances in any case in which a person:
> > (1) applies for a decree or modification of a decree concerning the custody, support, or visitation of a child of the parties; . . .
> > . . . .
>
> (b) Before a court may award costs and counsel fees under this section, the court shall consider:
> > (1) the financial status of each party;
> > (2) the needs of each party; and
> > (3) whether there was substantial justification for bringing, maintaining, or defending the proceeding.
>
> (c) Upon a finding by the court that there was an absence of substantial justification of a party for prosecuting or defending the proceeding, and absent a finding by the court of good cause to the contrary, the court shall award to the other party costs and counsel fees.

We must determine whether the court abused its discretion in finding "the parties' relative financial status and the fees and expenses incurred by both sides" constituted good cause under FL § 12-103(c) to not award Mother all of her reasonable attorneys' fees.

10

FL § 12-103 does not define "good cause." In *In re Robert G.*, 296 Md. 175 (1983), our Supreme Court held that Maryland follows the definition of good cause in Black's Law Dictionary:

> Substantial reason, one that affords a legal excuse. Legally sufficient ground or reason. Phrase 'good cause' depends upon circumstances of individual case, and finding of its existence lies largely in discretion of officer or court to which decision is committed. . . . 'Good cause' is a relative and highly abstract term, and its meaning must be determined not only by verbal context of statute in which term is employed but also by context of action and procedures involved in type of case presented.

296 Md. at 179 (quoting *Black's Law Dictionary* 623 (5th ed. 1979)); *see also Meek v. Linton*, 245 Md. App. 689, 720–21 (2020). "When 'good cause' is used as an undefined term in a statute, it is a 'flexible term' that is 'not amenable to general rules or rigid formulas. Instead, its meaning must be deduced from the facts of each case in a manner that is consistent with the [statute's] fundamental purpose.'" *Caldwell v. Sutton*, 256 Md. App. 230, 273 (2022) (quoting *Meek*, 245 Md. App. at 721). We apply an abuse of discretion standard in reviewing a court's finding of good cause. *See In re Robert G.*, 296 Md. at 177; *Meek*, 245 Md. App. at 723. "[T]he court's discretion is always tempered by the requirement that the court correctly apply the law applicable to the case." *Arrington v. State*, 411 Md. 524, 552 (2009)

In *Meek v. Linton*, this Court analyzed Maryland Code Annotated, Estates and Trusts Article ("ET") § 13-707(c)(1)(ii), which "provides that a court can appoint a person with lower priority as a guardian [of a disabled adult] based on a finding of good cause[.]" *Caldwell*, 256 Md. App. at 273–74 (discussing the ET article in *Meek*). The statute did not define good cause, so this Court, upon "consideration of the purpose of ET § 13-707 and

11

relevant case law," defined good cause under the statute as "a substantial reason to find that a person with lower priority under ET § 13-707(a) is a better choice than a person with higher priority to act in the best interest of the" disabled adult. *Meek*, 245 Md. App. at 723. In defining good cause under the statute, we cited the definition of good cause in Black's Law Dictionary, *supra*. We also stressed that our definition of good cause under ET § 13-707(c)(1)(ii) "is a flexible one, and its application will vary with the facts and circumstances of the individual case." *Id.* Under an abuse of discretion standard, we then reviewed "whether the trial court's reasons [to select one party over another as guardian of the adult in the case], either individually or as a whole, can be classified as substantial, and thus constitute 'good cause.'" *Id.*; *see also Caldwell*, 256 Md. App. at 274 (following the same approach this Court took in *Meek* by defining good cause in the context of a statute that did not define the term and then reviewing the court's finding of good cause for an abuse of discretion).

We follow the same approach this Court outlined in *Meek* for analyzing a court's finding of good cause under a statute that does not define good cause. *First*, we consider the purpose of FL § 12-103(c) and relevant case law in order to define good cause under FL § 12-103(c). *Second*, under an abuse of discretion standard, we review whether the court's reasons for not awarding Mother all of the attorneys' fees she requested can constitute good cause under the statute.[8]

---

[8] The Court in *Meek* additionally reviewed whether the court's finding of good cause was supported by competent evidence, thereby meeting the clearly erroneous standard of review for findings of fact. 245 Md. App. at 723. We will incorporate any necessary review

*1. Definition of "Good Cause" Under FL § 12-103(c).*

The Maryland Legislature amended FL § 12-103 in 1993 to add subsection (c) for "the purpose of requiring, rather than permitting, a court to award certain expenses, including costs and counsel fees," in child support, custody, and visitation proceedings. 1993 Md. Laws, Ch. 514. Prior to the addition of FL § 12-103(c), courts awarded attorneys' fees pursuant to FL § 12-103(b), which gives courts discretion in awarding expenses or costs and counsel fees. Senate Judicial Proceedings Committee, Bill Analysis for House Bill 381 (Md. 1993). In exercising this discretion, FL § 12-103(b) requires courts to consider the financial status and needs of each party, as well as whether there was substantial justification for bringing, maintaining, or defending the proceeding. FL § 12-103(c), unlike FL § 12-103(b), "makes the award of expenses or costs and counsel fees *mandatory* if the court finds no substantial justification for the prosecution or defense of the proceeding" and absent a finding by the court of good cause to the contrary. Bill Analysis for House Bill 381 (emphasis added). Therefore, the General Assembly's purpose in enacting FL § 12-103(c) was to limit judges' discretion in awarding fees by requiring judges—absent a finding of good cause—to award fees to a party who has to litigate against a party that lacks substantial justification in prosecuting or defending a proceeding.

In *Davis v. Petito*, 425 Md. 191 (2012), the Maryland Supreme Court provided more detail as to what drove the Maryland Legislature to require courts to award attorneys' fees in certain circumstances under FL § 12-103(c):

of the court's factual findings alongside our discussion of whether the court abused its discretion in finding good cause.

13

Testimony provided in the file for House Bill 381, which contained the current language of subsection (c), reflects that its purpose was to address the inability of custodial parents to finance judicial enforcement of court-ordered child support. *See* Memorandum of Delegate Ellen R. Sauerbrey, Additional Testimony on HB 381, Alimony and Child Support—Mandatory Award of Expenses (Feb. 16, 1993), quoting Testimony of Jill Coleman ("But without child support coming in, who has the money to pay a lawyer to collect child support? This means that non-payment of child support is actually a powerful way of evading the obligation to pay child support.").

In support of House Bill 381, Judge Rosalyn B. Bell of the Court of Special Appeals, as a member of the Governor's Task Force on Family Law, provided written testimony that custodial parents, who were entitled to receive court-ordered child support payments, often did not because the non-custodial parent refused to pay, knowing that the custodial parent could not afford to hire an attorney and enforce the order. While judges already had discretion to award attorneys' fees, many did not choose to exact this toll:

> "The Task Force often heard the same complaint from divorced persons, including single heads of households, that court-awarded alimony and child support cannot be collected because the proceedings necessary to enforce such awards are simply too expensive. In many instances, the responsible party is aware of the expenses involved in enforcement and ignores the court's directive to pay alimony or child support.
>
> "At the present time, the law allows the court to award such expenses, but the reality is that this is rarely done, because enforcement never appears to be a 'problem.' By requiring the court to award costs and counsel fees, the Bill facilitates collection of alimony and child support. This helps a large segment of our children and their custodians. This Bill also assists those persons who, after years of being out of the workplace, are unable to earn sufficient salaries to provide for themselves, let alon[e] enforce an alimony award to which they are entitled."

> Letter from the Honorable Rosalyn B. Bell, to Delegate Joseph F. Vallario, Jr., Chairman of the House Judiciary Committee (Feb. 8, 1993).

425 Md. at 202–03. While the legislative history outlining the purpose behind FL § 12-103(c) specifically discusses enforcement of child support awards, it supports an

overarching purpose of the statute discernible from its plain language: protecting parties who have to litigate against parties that lack substantial justification in prosecuting or defending the proceeding.

Aside from its discussion of statutory purpose, the Court in *Davis* further outlined the approach to awarding attorneys' fees under FL § 12-103 based upon the presence or absence of substantial justification:

> In considering an award under Section 12-103[(c)], the 'absence of substantial justification of a party for prosecuting or defending the proceeding,' would, without good cause, result in an award of attorneys' fees and costs to the other party, so long as those fees and costs are reasonable. Under Section 12-103(b), however, substantial justification is but one consideration in the triad, the others being financial status and needs, to support fee shifting.

425 Md. at 201. In remanding to the circuit court to reconsider its attorneys' fees award, the Court clarified what courts must consider in awarding attorneys' fees under FL § 12-103:

> If the [c]ircuit [c]ourt determines that Ms. Davis lacked substantial justification for bringing her child custody modification claim and absent a finding of good cause to the contrary, then under Section 12-103(c), the reasonableness of Mr. Petito's attorneys' fees would then be the only consideration. If the [c]ircuit [c]ourt finds under Section 12-103(b), however, that Ms. Davis and Mr. Petito each had substantial justification for bringing or defending their respective positions in the proceeding, then the [c]ircuit [c]ourt must value the legal services afforded to both parties… and determine their reasonableness, after which the [c]ircuit [c]ourt must proceed to assess Ms. Davis's and Mr. Petito's financial status and needs.

*Id.* at 206. Although § 12-103 does not discuss reasonableness of attorneys' fees, case law mandates that "[w]hen [a] case permits attorney's fees to be awarded, they must be

15

reasonable, taking into account such factors as labor, skill, time, and benefit afforded to the client[.]" *Petrini*, 336 Md. at 467.

In defining good cause under FL § 12-103(c), we also consider other family law fee shifting provisions, which our Supreme Court ruled must "be construed in harmony" with FL § 12-103. *Henriquez v. Henriquez*, 413 Md. 287, 306 (2010). Those statutes, which govern fee shifting in divorce (FL § 7-107), marital property disposition (FL § 8-124), and alimony matters (FL § 11-110), specifically detail:

> Upon a finding by the court that there was an absence of substantial justification of a party for prosecuting or defending the proceeding, and absent a finding by the court of good cause to the contrary, the court shall award to the other party the reasonable and necessary expense of prosecuting or defending the proceeding.

FL §§ 7-107(d), 8-124(d), 11-110(d).

Based upon this statutory language, as well as that in FL § 12-103(c), and the purpose of FL § 12-103(c), we conclude good cause under FL § 12-103(c) means a substantial reason to not award a party all of their reasonable attorneys' fees if the court finds the other party did not have substantial justification for prosecuting or defending the proceeding.[9] Just as we included in our definitions of good cause in *Meek* and *Caldwell*, "[t]his definition is a flexible one, and its application will vary with the facts and circumstances of the individual case." *Meek*, 245 Md. App. at 723; see also *Caldwell*, 256 Md. App. at 274.

---

[9] For clarification, "substantial reason" is not to be confused with a finding of a party lacking "substantial justification" to prosecute or defend a proceeding. *See In re Robert G.*, 296 Md. at 179 ("*Black's Law Dictionary* 623 (5th ed. 1979), defines good cause as: 'Substantial reason, one that affords a legal excuse.'").

*2. Parties' Relative Financial Status and Relative Fees and Expenses Incurred Cannot Constitute Good Cause Under FL § 12-103(c).*

The court in this case found "the parties' relative financial status and the fees and expenses incurred by both sides" constituted good cause to not award Mother all of the attorneys' fees she requested. Under an abuse of discretion standard, we need to determine whether the court's finding can be classified as a substantial reason to not award Mother all of her reasonable attorneys' fees, thus constituting good cause.

As discussed, the state Legislature's purpose in enacting FL § 12-103(c) was to limit judges' discretion in awarding fees by requiring judges to award fees to a party who has to litigate against a party that lacks substantial justification in prosecuting or defending a proceeding. Although judges retain some discretion in awarding fees when a party lacks substantial justification, as the judge can find good cause to not award a party all of their reasonable attorneys' fees pursuant to FL § 12-103(c), this discretion is much more limited than the discretion judges possess in rendering an award when both parties have substantial justification in prosecuting or defending the proceeding. However, allowing judges to consider parties' relative financial status and fees in determining whether good cause exists under FL § 12-103(c) is not "consistent with [FL § 12-103(c)'s] fundamental purpose" of limiting judges' discretion in awarding attorneys' fees when a party lacks substantial justification. *Caldwell*, 256 Md. App. at 273 (quoting *Meek*, 245 Md. App. at 721).

Our Supreme Court's decision in *Davis* highlights how allowing judges to consider parties' relative financial status and fees in good cause analysis is not consistent with FL § 12-103(c)'s purpose. As we noted above, the Court in *Davis* outlined the approach to

17

awarding attorneys' fees under FL § 12-103 based upon the presence or absence of substantial justification:

> If the [c]ircuit [c]ourt determines that Ms. Davis lacked substantial justification for bringing her child custody modification claim and absent a finding of good cause to the contrary, then under Section 12-103(c), the reasonableness of Mr. Petito's attorneys' fees would then be the only consideration. If the [c]ircuit [c]ourt finds under Section 12-103(b), however, that Ms. Davis and Mr. Petito each had substantial justification for bringing or defending their respective positions in the proceeding, then the [c]ircuit [c]ourt must value the legal services afforded to both parties… and determine their reasonableness, after which the [c]ircuit [c]ourt must proceed to assess Ms. Davis's and Mr. Petito's financial status and needs.

425 Md. at 206. *Fader's Maryland Family Law* § 15-4 summarizes *Davis* by outlining a three-step process to awarding attorneys' fees:

1. [D]etermine whether each party was justified in pursuing the case;

2. [I]f no, the court MUST award fees to the justified party, without the need for any consideration of either party's financial status or needs, or the unjustified party's ability to pay;

3. [I]f yes, the court must determine whether fee shifting is appropriate by analyzing fees incurred and the parties' relative abilities to pay.

Cynthia Callahan & Thomas C. Ries, *Fader's Maryland Family Law* § 15-4 (LexisNexis, 7th ed.). *Davis* and *Fader's Maryland Family Law* indicate judges have less discretion in rendering an award of attorneys' fees if they determine a party lacked substantial justification for prosecuting or defending a claim because absent a finding of good cause to the contrary, the reasonableness of the other party's fees would "be the *only* consideration." *Id.* at 206 (emphasis added). But if judges can consider each party's financial status and needs in determining whether good cause exists under FL § 12-103(c), there would essentially be no difference between the court's approach to rendering

18

attorneys' fees when a party lacks substantial justification for prosecuting or defending a claim versus when both parties have substantial justification. Consequently, such a meaning of good cause under FL § 12-103(c) does not limit judges' discretion "in a manner that is consistent with [FL § 12-103(c)'s] fundamental purpose." *Caldwell*, 256 Md. App. at 273 (quoting *Meek*, 245 Md. App. at 721).

Aside from not aligning with the purpose of FL § 12-103(c) to limit judges' discretion in awarding attorneys' fees when a party lacks substantial justification in prosecuting or defending a claim, allowing judges to consider parties' relative financial status and fees in a good cause analysis contrasts with conclusions by our Supreme Court and this Court. The Court in *Davis* held "[t]he only time that the relative amounts of the parties' attorneys' fees should be considered is when both are determined to have substantial justification for their positions[.]" 425 Md. at 206. In light of *Davis*, this Court in *Guillaume v. Guillaume*, 243 Md. App. 6 (2019), concluded "the financial circumstances of the parties are not part of the calculus for an award under FL § 12-103(c)." 243 Md. App. at 27. Although these statements are not directly about good cause, they very strongly imply the parties' relative attorneys' fees and financial circumstances are not part of judges' determination of whether good cause exists under FL § 12-103(c).

We conclude the court abused its discretion in finding parties' relative financial status and relative fees and expenses incurred constitute good cause under FL § 12-103(c) because such finding is inconsistent with the purpose of FL § 12-103(c) to limit judges' discretion in awarding attorneys' fees when a party lacks substantial justification in prosecuting or defending a claim, as well as contrasts with relevant case law. Accordingly,

19

we vacate the court's award of attorneys' fees and remand for the court to reconsider whether good cause exists to not award Mother all of her reasonable attorneys' fees. We instruct the court to not factor in Father's financial circumstances relative to Mother's, or Father's attorneys' fees relative to Mother's, in its reconsideration. The court may, however, consider the reasonableness of Mother's attorneys' fees, "taking into account such factors as labor, skill, time, and benefit afforded to" Mother. *Petrini*, 336 Md. at 467. The court may also consider other factors consistent with this Court's definition of good cause under FL § 12-103(c).[10]

> **THE JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY IS VACATED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. APPELLEE TO PAY THE COSTS.**

---

[10] Even if the court could consider the financial positions of the parties in deciding "good cause" under FL § 12-103(c), the court's finding of good cause in this case was clearly erroneous. Mother used all her assets and went deeply in debt to defend against Father's completely unjustified custody action, and Father, who persisted in pursuing this unjustified action, had millions of dollars in available assets. In that situation, there was not a substantial reason for the court to award Mother less than the full amount of fees she was seeking.

20